[Civ. No. 41036. Second Dist., Div. Five. Oct. 10, 1973.]

JAMES JOSE MARIA RAIGOZA et al., Plaintiffs and Appellants, v. TIMOTHY SPERL, as Marshal, etc., et al., Defendants and Respondents.

COUNSEL

Joel S. Aaronson, Patrick O. Meissner and Alberto Saldamando for Plaintiffs and Appellants.

John D. Maharg, County Counsel, Michael H. Dougherty, Deputy County Counsel, Styskal, Wiese & Melchione, Alvin O. Wiese, Jr., and Edgar J. Melchione for Defendants and Respondents.

Dahl, Hefner, Stark, Marois & James as Amicus Curiae on behalf of Defendants and Respondents.

---

**OPINION**

KAUS, P..J.—This is an appeal from the denial of a preliminary injunction. The issue is the constitutionality of California's postjudgment wage garnishment procedures. The plaintiffs are James and Margarita Raigoza, as taxpayers, and LaVerne DiNapoli, a judgment debtor. All three are sometimes collectively referred to as "debtor." The defendants are various local and county officials, and D. Sigler, DiNapoli's creditor. The complaint seeks declaratory and injunctive relief.

The facts are simple and undisputed. The judgment creditor, through the Los Angeles County Marshal, garnished $25 of DiNapoli's wages. She claimed that the garnishment deprived her of property without due process of law. The trial court, in denying the preliminary injunction, disagreed, as do we.[1]

### The Statutory Scheme

A judgment creditor may obtain a writ of execution authorizing a levy against the debtor's property. (Code Civ. Proc., § 682, subd. 1.)[2]

The writ must be in a specified form, which includes a notice to the judgment debtor that he "may be entitled to file a claim exempting [his] property from execution." The form states that the claim must be filed "within 10 days from the date [the] property was levied upon" and advises the debtor that if he wishes to consult an attorney, he "should do so promptly so that an affidavit, if any, may be filed on time." (§ 682.1; Jud. Council Form, rev. eff. Mar. 4, 1972.)

---

[1]Even though the appeal is from the denial of a preliminary injunction, the plaintiffs, defendant creditor, and amicus curiae California Association of Collectors recognize that the only issue on appeal is the constitutionality of the postjudgment wage garnishment procedures. The official defendants focus on the procedural aspects of this case. Since it is clear that an injunction must issue if the system is unconstitutional, we reach the merits without any discussion of procedural niceties.

[2]All references are to the Code of Civil Procedure.

The code provides that "All goods, chattels, moneys or other property, . . . not exempt by law, except as provided for in Section 690.6 [wage garnishment], . . . are liable to execution." (§ 688.) The code then contains a long list of wholly or partially exempt assets. (§§ 690.1-690.29.)[3]

Section 690.6 provides, in substance, that at least 75 percent of a debtor's earnings are not subject to levy, that is, are "exempt from execution without filing a claim for exemption." With respect to wages, the writ of execution affects a maximum of 25 percent of the debtor's net earnings.[4]

After the levy has been accomplished, a copy of the writ is mailed to the judgment debtor (§ 682.1) who may then proceed to claim a full exemption of his earnings.[5]

Approximately 25 percent of wages, as noted, are initially subject to garnishment. The wage exemption provision states: "All earnings of the debtor received for his personal services rendered at any time within 30 days next preceding the date of a withholding by the employer . . . [are exempt] if necessary for the use of the debtor's family . . . unless the debts are . . . [i]ncurred . . . for the common necessaries of life" or for an employee's services (§ 690.6, subd. (c)).

---

[3]Household furnishings, appliances and clothes (§ 690.1); motor vehicles (§ 690.2); mobilehomes (§ 690.3); professional or business tools and equipment (§ 690.4); prosthetic and orthopedic appliances (§ 690.5); earnings (discussed in the text) (§ 690.6); savings (§ 690.7); condemnation and relocation proceeds (§ 690.8); life, disability, health insurance proceeds (§§ 690.9, 690.10, 690.11, 690.12); fraternal society benefits (§§ 690.13, 690.14); workmen's compensation claims and awards (§ 690.15); unemployment insurance contributions (§ 690.16); unemployment compensation (§ 690.175); public pensions, etc. (§ 690.18); public assistance aid (§ 690.19); hospital endowment funds (§690.20); prisoners funds (§ 690.21); public buildings and property (§ 690.22); cemetery lots (§ 690.24); church pews (§ 690.25); property of certain boards and districts (§ 690.26); housing authority realty (§ 690.27); educational grants (§ 690.28); redevelopment agency property (§ 690.29).

[4]Section 690.6, subdivision (b) provides. "(b) One-half or such greater portion as is allowed by statute of the United States, of the earnings of the debtor received for his personal services rendered at any time within 30 days next preceding the date of a withholding by the employer under Section 682.3, shall be exempt from execution without filing a claim for exemption as provided in Section 690.50."

Garnishment is limited by federal law to 25 percent of the debtor's disposable earnings or the amount by which disposable earnings exceed 30 times the federal minimum wage. (15 U.S.C. § 1673.) "Disposable earnings" are those earnings remaining after all amounts required by law to be withheld are deducted. (15 U.S.C. § 1672.)

[5]The claim covers wages withheld both before and after the claim is filed. (§ 682.3, subd. (b).)

The procedure for claiming the wage exemption allowed—or any of the nonautomatic exemptions summarized above (*ante,* fn. 4)—is as follows:

To claim the exemption if allegedly exempt property is levied upon, the judgment debtor must file a claim of exemption within 10 days from the date of levy. (§ 690.50, subd. (a).)[6]

The creditor then has five days to file a counteraffidavit opposing the claim of exemption. (§ 690.50, subd. (c).) If the creditor does not oppose the debtor's claim, the officer releases the property. (§ 690.50, subd. (d).) Thus, on an unopposed claim of exemption, the debtor is deprived of property for about two weeks.

If the creditor does oppose the claim, either party make make a motion[7] for a hearing on the claim within five days after the creditor's counteraffidavit is filed. The hearing must be scheduled within 15 days from the date of the motion. (§ 690.50, subd. (e).) Thus, on a contested claim the debtor will be deprived of the claimed property for above five weeks.

While the proceedings are pending the officer keeps possession of the property, and, if earnings are involved, the garnishments of later paychecks continue. (§ 690.50, subd. (h).) At the hearing on the claim, the debtor has the burden of proof. (§ 690.50, subd. (i).) The judgment (order granting or denying the claim) is appealable. (§ 690.50, subd. (m).)[8]

In effect, we have a statutory system by which a judgment creditor can garnish up to 25 percent of a judgment debtor's wages, which amount may be returned to the debtor, if he seeks an exemption and proves that he meets the statutory requirements for the exemption.

### Contentions

 The debtor's argument is simple and straightforward: The post-judgment garnishment procedure is unconstitutional because the debtor may be deprived of up to the 25 percent of his wages before he has had

---

[6]If earnings are involved, "each date that earnings are withheld . . . shall be deemed to be the date such earnings were levied upon." (§ 690.50, subd. (a).)

[7]If neither party makes a motion for a hearing, the property is released to the debtor. (§ 690.50, subd. (f).)

[8]If a claim of exemption for earnings is granted, the earnings held by the officer must be released within three days, unless the creditor has served the officer with a notice of appeal from the judgment. When a claim of exemption is granted on property other than earnings, the officer must hold the property until the judgment becomes final. (§ 690.50, subd. (j).)

an opportunity for a hearing to determine whether the garnished wages are exempt. The primary theory is that because wages are involved, the procedure is inconsistent with *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820], and its issue, cases which we will presently discuss. The secondary theory is that the exemption hearing is a "separate" proceeding, resulting in an appealable judgment, in which the question of how the judgment will be satisfied is to be decided and that due process prohibits procedures which allow the creditor to seize first and litigate later. Neither contention has merit. Whether postjudgment prehearing wage garnishment is good or bad social policy, the California procedure is not unconstitutional.

■ There is no question that a self-styled creditor may not seize an alleged debtor's property without notice and an opportunity for a hearing concerning the merits of his claim. (E.g., *Fuentes* v. *Shevin* (1972) 407 U.S. 67, 82-83 [32 L.Ed.2d 556, 570-572, 92 S.Ct. 1983] (replevin); *Sniadach* v. *Family Finance Corp., supra,* 395 U.S. 337, 342 [23 L.Ed.2d 349, 354] (wage garnishment); *Blair* v. *Pitchess,* 5 Cal.3d 258, 277 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206] (replevin or claim and delivery); *Randone* v. *Appellate Department,* 5 Cal.3d 536, 547 [96 Cal. Rptr. 709, 488 P.2d 13] (personal property attachment); *McCallop* v. *Carberry,* 1 Cal.3d 903, 907 [83 Cal.Rptr. 666, 464 P.2d 122] (wage garnishment); *Mihans* v. *Municipal Court,* 7 Cal.App.3d 479, 488 [87 Cal.Rptr. 17] (writ of possession of real property); cf. *Mendoza* v. *Small Claims Court,* 49 Cal.2d 668, 673-674 [321 P.2d 9] (unlawful detainer action in small claims court).)

■ Even though the cited cases only dealt with situations in which there had been no hearing on the merits of the basic dispute, the debtor contends that the principle of *Sniadach* applies to all takings of wages, even pursuant to a judgment. The contention is without merit. *Sniadach* did not turn on the nature of the property seized, but on the lack of an opportunity to contest the seizure. The fact that wages were involved simply enabled the court to point up the consequences of ignoring the dictates of due process: "[T]he wage earner is deprived of his enjoyment of earned wages without any opportunity to be heard and to tender any defense he may have, whether it be fraud or otherwise." (395 U.S. at p. 339 [23 L.Ed.2d at p. 352].) " 'The idea of wage garnishment in advance of judgment . . . is a most inhuman doctrine.' " (*Id.* at p. 340 [23 L.Ed. 2d at p. 353].) "The result is that a prejudgment garnishment . . . may as a practical matter drive a wage-earning family to the wall." (*Id.* at pp. 341-342 [23 L.Ed.2d at pp. 353-354].)

*Fuentes* v. *Shevin, supra,* 407 U.S. 67, makes clear that the issue in *Sniadach* was not wages: "Both decisions [*Sniadach* and *Goldberg* v. *Kelly* (1970) 397 U.S. 254] were in the mainstream of past cases, having little or nothing to do with the absolute 'necessities' of life but establishing that due process requires an opportunity for a hearing before a deprivation of property takes effect." (407 U.S. at p. 88 [32 L.Ed.2d at p. 574].)

Our Supreme Court said the same thing in *Blair* v. *Pitchess, supra,* 5 Cal.3d 258, and *Randone* v. *Appellate Department, supra,* 5 Cal.3d 536: "Our conclusion in *Blair* fully recognized that the *Sniadach* decision did not establish a new constitutional rule for wages but, on the contrary, simply brought the traditional procedural due process analysis, worked out over may decades of constitutional litigation, to bear upon the question of the validity of summary prejudgment remedies." (*Randone, supra,* 5 Cal.3d at pp. 548-549 [fn. omitted].)

The debtor relies on *Coe* v. *Armour Fertilizer Works* (1915) 237 U.S. 413 [59 L.Ed. 1027, 35 S.Ct. 625], for the proposition that due process applies to postjudgment proceedings. Of course it does, but the imperatives of due process depend on the circumstances. To equate the situation in *Coe* with the problem in this case takes a gross misreading of *Coe,* which involved a Florida statute that permitted a judgment creditor of a corporation to levy on stockholder's property if the corporation did not have sufficient assets to satisfy the judgment. (237 U.S. at p. 416 [59 L.Ed. at p. 1028].)

The Supreme Court held that the Florida statute violated due process: "It may be conceded that a judgment recovered against a corporation, without fraud or collusion, in a court having jurisdiction over the subject-matter and the party, may consistently with the Fourteenth Amendment be treated as concluding the stockholder respecting the existence and amount of the indebtedness so adjudged. [Citations.] But before a third party's property may be taken to pay that indebtedness upon the ground that he is a stockholder and indebted to the corporation for an unpaid subscription, he is entitled, upon the most fundamental principles, to a day in court and a hearing upon such questions as whether the judgment is void or voidable . . . whether he is a stockholder and indebted, and other defenses *personal to himself.* [Citations.]" (*Id.* at p. 423 [59 L.Ed. at p. 1031]. Italics added.)

The impact of *Coe* on this case escapes us; no one suggests that Di-Napoli was not a party to the action in which the debt was adjudicated. No one suggests that California's postjudgment wage garnishment procedure envisions liability by proxy.

We hold that due process, as recognized and applied in *Sniadach,* does not invalidate California's procedures relating to the postjudgment garnishment of wages which may be exempt from execution.

■ The debtor impliedly recognizes that postjudgment attachment or garnishment[9] involves significantly different legal issues than do prejudgment seizures of an alleged debtor's property. Therefore, the debtor attempts to characterize the execution of exemptions proceedings as an entirely new and different proceeding. He contends that the only issue determined in the proceedings that resulted in the judgment against the debtor was the fact that the debtor owed the creditor a specific amount of money, but that those proceedings did not decide what the creditor was entitled to seize to satisfy that judgment.

But the characterization of execution and exemption proceedings as "separate" is just a rearrangement of the argument which we have already rejected. However laudable the policy of legislative exemptions, the policy is not constitutionally required. The Legislature could provide for postjudgment wage garnishments in fixed statutory percentages and amounts without allowing any additional exemption at all. The Legislature chose not to follow this harsh route.

■ Of course, "although an individual can claim no constitutional right to . . . receive any . . . publicly conferred benefit, the government may not condition . . . receipt of such benefit upon any terms that it may choose to impose, and . . . the power of government to withhold benefits from its citizens does not encompass a 'lesser' power to grant such benefits upon an arbitrary deprivation of constitutional rights. [Citations.]" (*Vogel* v. *County of Los Angeles,* 68 Cal.2d 18, 21 [64 Cal.Rptr. 409, 434 P.2d 961]; see also, e.g., *In re Tucker,* 5 Cal.3d 171, 192 [95 Cal. Rptr. 761, 486 P.2d 657].)

■ To characterize levies of execution as a "taking" is nonproductive. Without doubt, a levy of execution involves a "taking" in the sense that the debtor is deprived of an interest in something of value against his will. The focus, however, must be on the "process" and here the question is

---

[9]Although the debtor attempts to limit his challenge to postjudgment wage garnishment, as we have shown, the cases on which he relied (e.g., *Sniadach* v. *Family Finance Corp., supra,* 395 U.S. 337; *Fuentes* v. *Shevin, supra,* 407 U.S. 67) do not turn on the type of property seized. Necessarily then the debtor is challenging the entire execution and exemption procedure in California, to the extent that the property is not automatically exempt from execution, that is, that the debtor must seek an exemption. (§§ 690, subd. (a), 690, subd. (b), see e.g., household goods (§ 690.1), motor vehicles (§ 690.2), tools (§ 690.4).)

simple: Is it consistent with due process to require the judgment debtor to apply for and prove the right to an exemption after seizure, rather than to insist that the creditor prove in a pre-seizure hearing that arguably exempt property is subject to levy?

We have noted that the Legislature has provided that specified property "is exempt . . . when claim for exemption is made" unless the statutes specifically provide that no claim of exemption is required. (§ 690, subd. (a).) With respect to wage garnishments, the creditor is entitled to the disputed 25 percent of new wages subject to garnishment unless the debtor needs those wages for necessaries: "All earnings . . . [are exempt] if necessary for the use of the debtor's family ., . . ." (§ 690.6, subd. (c).)

We find no "arbitrary deprivation" in requiring the debtor to apply for and prove the exemption. (See *Central R. Co.* v. *Pennsylvania* (1962) 370 U.S. 607, 613 [8 L.Ed.2d 720, 725-726, 82 S.Ct. 1297] (tax exemption).) In *Speiser* v. *Randall* (1958) 357 U.S. 513 [2 L.Ed.2d 1460, 78 S.Ct. 1332], which held unconstitutional a loyalty oath required to obtain a California veteran's tax exemption, the court easily accepted the "familiar practice in the administration of a tax program for the taxpayer to carry the burden of introducing evidence to rebut the determination of the collector." (*Id.* at p. 524 [2 L.Ed.2d at p. 1472].) The problem in *Speiser* was that "on an issue concerning freedom of speech" (*id.* at p. 523 [2 L.Ed.2d at p. 1471]), the effect of requiring the loyalty oath as part of the tax exemption application was to place on the person seeking the exemption the burden of proving that he was not guilty of a crime. (*Id.* at p. 526 [2 L.Ed.2d at pp. 1472-1473].)

Unlike *Speiser,* placing the burden on the debtor to prove his entitlement to the property exemption does not impinge on a constitutionally protected right. Speech is protected by the United States and California Constitutions; wage exemptions, as noted, are a matter of legislative choice. It is eminently reasonable to place the burden of applying for and proving that the wages are exempt on the debtor, who knows best what is "necessary for the use" of his family. (See, e.g., Witkin, Cal. Evidence (2d ed. 1966) Burden of Proof and Presumptions, § 198, pp. 182-183, and 1972 Supp.) Surely he is in a better position to prove his need for the garnished wages, than the creditor is to disprove it.[10]

---

[10] "The truth seems to be, and many of the modern decisions expressly state, that the allocation of the burden is to be determined by considerations of fairness, convenience and policy." (Morgan, Basic Problems of Evidence (1957) p. 28.)

Finally, the debtor contends that California's postjudgment garnishment procedures are inconsistent with the "public policy" underlying the exemption laws. The contention is without merit; the "public policy" on which he relies is no more and no less than the very legislation which he challenges as unconstitutional.

The order denying the preliminary injunction is affirmed.

Stephens, J., and Hastings, J., concurred.

A petition for a rehearing was denied October 29, 1973, and appellants' petition for a hearing by the Supreme Court was denied December 5, 1973.