Etta Jane BROWN, Individually, and on behalf of all others similarly situated, Plaintiff,

v.

LIBERTY LOAN CORPORATION OF DUVAL, a corporation, and S. Morgan Slaughter, as Clerk of the Circuit and County Courts of Duval County, Florida, Defendants.

State of Florida, Intervening Defendant.

No. 73–631–Civ–J–S.

United States District Court, M. D. Florida, Jacksonville Division.

Nov. 25, 1974.

As Modified Dec. 2, 12, 1974.

Steven M. Goldstein, Florida State University Law School, Tallahassee, Fla., and Duval County Legal Aid Ass'n, Jacksonville, Fla., for plaintiff.

Frank X. Friedmann, Jr., Jacksonville, Fla., for defendant Liberty Loan.

William Lee Allen, Jacksonville, Fla., for defendant Slaughter.

Thomas Harris, Asst. Atty. Gen., Dept. of Legal Affairs, Civil Div., Tallahassee, Fla., for defendant State of Florida.

## ORDER AND OPINION

CHARLES R. SCOTT, District Judge.

The issue raised herein is whether the post-judgment garnishment of wages without first giving notice of said garnishment and an opportunity for a hearing to contest the propriety of said garnishment to the individual whose wages are to be garnished violates procedural due process under the Fourteenth Amendment. For the reasons set forth below, this Court hereby concludes that it does.

Before reaching the merits of this case, certain issues raised regarding abstention, three-judge court jurisdiction, mootness, and the propriety of maintenance of this cause as a class action must first be resolved.

## I. FACTUAL BACKGROUND [1]

The plaintiff, Etta Jane Brown, is a 28 year old resident of Jacksonville, Florida. On July 13, 1973, a judgment in the amount of $636.03 was entered for the defendant Liberty Loan Corporation of Duval against the plaintiff and her husband Saul F. Brown. On July 25, 1973, the aforesaid judgment not having been satisfied, a motion for garnishment after judgment was filed by Liberty Loan in the County Court in and for Duval County, Florida. On that same day a writ of garnishment was issued by the defendant S. Morgan Slaughter (as clerk of the Circuit and County Courts of Duval County). The sheriff of Duval County served this writ on plaintiff's employer, Baby's Best Diaper Service, on July 26, 1973.

The motion for garnishment was made and the writ of garnishment was issued pursuant to Sections 77.01 and 77.03 of the Florida Statutes.[2] The plaintiff did

---

1. By order entered in this case on April 25, 1974, this Court deferred ruling upon plaintiffs' motion for summary judgment, filed herein April 3, 1974, until the parties filed a joint pre-trial stipulation of facts so that the rights of all the parties could be adjudicated more properly. On July 25, 1974, the parties filed a joint stipulation of facts as requested and, on this basis, the Court hereby reaches the merits of the case without the necessity of trial since there is no genuine issue of material fact, and even though only the plaintiff has filed a motion for summary judgment. 6 Moore's Federal Practice ¶ 56.12 at 2241 (2d Ed. 1974).

2. Sections 77.01 and 77.03 of the Florida statutes provide as follows:

77.01 *Right to Garnishment*
Every person who has sued to recover a debt or has recovered judgment in any court against any person, natural or corporate, has a right to a writ of garnishment, in the manner hereinafter provided, to subject any debt due to defendant by a third person, and any tangible or intangible personal property of defendant in the possession or control of a third person. The officers, agents and employees of any companies or corporations are third persons in regard to the companies or corporations, and as such are subject to garnishment after judgment against the companies or corporations.

77.03 *Writ; Procurement After Judgment*
After judgment has been obtained against

not receive actual or constructive notice of the institution of the garnishment proceedings from either of the defendants herein prior to the service of the writ of garnishment on plaintiff's employer, or at the time said service was made. The first notice plaintiff received of the writ was when she was informed of it by her employer.

Upon receipt of the writ of garnishment, Baby's Best Diaper Service answered the writ and said answer was filed on July 27, 1973. Baby's Best Diaper Service was required to withhold a portion of the named plaintiff's wages and was withholding $7.50 of the named plaintiff's wages pursuant to said writ of garnishment at the time this action was filed on August 9, 1973. On July 26, 1973, the plaintiff filed an affidavit of exemption stating the she was the head of a family residing in the State of Florida and that the money attached was for personal labor and services.[3] On July 27, 1973, defendant Liberty Loan filed an affidavit denying the affidavit of exemption. On August 10, 1973, after a hearing on the named plaintiff's affidavit of exemption, the Honorable John M. Marees, Judge of the County Court, Duval County, Florida, ordered that the writ of garnishment be dissolved because the named plaintiff was in fact the head of a family residing in the State of Florida and because the money sought to be garnished was for personal labor and services. Pursuant to this order, Baby's Best Diaper Service released to the named plaintiff the wages it was withholding. The actual damages suffered by the named plaintiff as a result of the aforesaid garnishment proceedings equal a reasonable rate of return times $7.50 for the number of days that said funds were withheld by her employer. The judgment for Liberty Loan against her and her husband has not been satisfied to this date.

This Court hereby concludes that it has jurisdiction over the parties and subject matter pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).

## II. ABSTENTION

The State of Florida, as intervening defendant, contends that the abstention doctrine enunciated in Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 961 (1941), is appropriate in the instant case. Although this Court has already rejected this contention in its previous order of April 25, 1974, a few brief comments seem appropriate.

The two prerequisites for application of the *Pullman* doctrine are: (1) the presence of a substantial state

---

defendant but before the writ of garnishment is issued, the plaintiff, his agent or attorney, shall file a motion (which shall not be verified or negative defendant's exemptions) stating the amount of the judgment and that movant does not believe that defendant has in his possession visible property on which a levy can be made sufficient to satisfy the judgment. The motion may be filed and the writ issued either before or after the return of execution.

3. Section 222.12 of the Florida Statutes provides as follows:

Whenever any money or other thing due for labor or services as aforesaid is attached by such process, the person to whom the same is due and owing may make oath before the officer who issued the process that the money attached is due for the *personal labor and services of*

such person, and he is the head of a family residing in said state. When such an affidavit is made, notice of same shall be forthwith given to the party, or his attorney, who sued out the process, and if the facts set forth in such affidavit are not denied under oath within two days after the service of said notice, the process shall be returned, and all proceedings under the same shall cease. If the facts stated in the affidavit are denied by the party who sued out of process within the time above set forth and under oath, then the matter shall be tried by the court from which the writ of process issued, in like manner as claims to property levied upon by writ of execution are tried, and the money or thing attached shall remain subject to the process until released by the judgment of the court which shall try the issue. (emphasis added)

**1028**

claim which may be dispositive of the case in favor of the plaintiff without the necessity of reaching the federal claim, and (2) the involvement of an unsettled question of state law. Wisconsin v. Constantineau, 400 U.S. 433, 438–439, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). The State of Florida's attempted invocation of the abstention doctrine fails on both counts. First of all, the plaintiff has no state claim which would be independent of a consideration of principles of *federal* due process. The State of Florida's claim that the plaintiff has a parallel state claim under the Florida state constitutional counterpart to the Fourteenth Amendment's Due Process Clause, Fla.Const., Art. I, § 9, fails to justify application of the abstention doctrine for the simple reason that if the abstention doctrine were applicable in such cases, all cases involving questions under the Due Process Clause of the Fourteenth Amendment would be left for prior adjudication in the courts of states, such as Florida, which have comparable due process clauses in their state

constitutions.[4] Such a conclusion would have to be construed as a gross abdication of *federal* judicial responsibility as to claims involving basic *federal* constitutional rights.

In addition to the state's failure to demonstrate the existence of an independent state claim which would be dispositive of the case without reaching the federal constitutional question, a careful analysis of the statutory scheme at issue herein discloses no ambiguity which is susceptible of a limiting construction by a state court. The statutory scheme appears to be clear on its face that a judgment debtor may not assert his exemption until after his wages are garnished and frozen. There being no unsettled question of *state* law involved in this case, abstention would therefore be inappropriate.

## III. MOOTNESS

The defendants vigorously contend that this case has become moot since, subsequent to the filing of this action, the County Court in and for Duval County dissolved the writ of garnishment on the basis that the named plaintiff was the head of a family residing in

---

4. The state's reliance upon Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), is misplaced in that although *Reetz* involved a statute that was unconstitutional under both the Constitution of the United States and the Alaska Constitution, the relevant clauses in the respective constitutions were not all comparable, much less parallel. The Equal Protection Clause of the Fourteenth Amendment was the basis for the federal constitutional claim in *Reetz*, whereas the applicable provisions of the Alaska Constitution involved the reservation to the people of the state for common use of fish, wildlife and waters in their natural state, and the prohibition of any exclusive right or special privilege of fishing in the natural waters of the state.

The state also paradoxically attaches significance to the fact that the Circuit Court of Dade County, Florida, in Mathis v. Purdy, Case No. 72–16180 (January 25, 1974), construed Section 222.06 of the Florida Statutes so that a judgment debtor is entitled to notice and an opportunity for a hearing on his Florida constitutional right to assert a

$1,000.00 personal property exemption prior to the taking of property pursuant to a writ of execution. The state contends that the statutory scheme in the case at bar can be given a similarly narrow construction by a state court so as to avoid outright invalidation by this Court. This contention is without merit for two reasons. First, as already pointed out in the text, the applicable statutes are unambiguous and thus not susceptible to a narrowing construction. Second, the Mathis v. Purdy decision was grounded almost exclusively on *federal* constitutional principles rather than on *state* law. A federal court need not defer to state courts for application of federal constitutional law where there are no unsettled questions of state law as in the instant case. Wisconsin v. Constantineau, 400 U.S. 433, 438–439, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L. Ed.2d 68 (1970); Harman v. Forssenuis, 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); Hobbs v. Thompson, 448 F.2d 456, 462 (5th Cir. 1971).

the State of Florida and that her wages which had been garnished were due for personal labor and services. However, as the plaintiff correctly points out, there are two reasons why this case is not moot. First, the named plaintiff is asking damages as well as declaratory relief. Therefore, although the plaintiff's wages have been released, her claim for damages remains extant, although the amount is concededly small. However, the plaintiff's financial stake in recovery is irrelevant insofar as the question of mootness is concerned where important constitutional rights are involved. Sniadach v. Family Finance Corporation, 395 U.S. 337, 342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (concurring opinion of Harlan, J.);[5] Jenkins v. United Gas Corporation, 400 F.2d 28, 29–31 (5th Cir. 1968). The fact that the defendants have offered to tender the amount in controversy into court in settlement of the dispute does not, in and of itself, render the case moot where, as in this case, the alleged constitutional deprivation is susceptible to recurrence in the future. It is well settled that the "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot", since "a controversy may remain to be settled in such circumstances . . . e.g., a dispute over the legality of the challenged practices" so that unless the controversy is settled the defendants would be "free to return to [their] old ways." United States v. W. T. Grant, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). See also United States v. Trans-Missouri Freight Assn., 166 U.S. 290, 308–310, 17 S.Ct. 540, 41 L.Ed. 1007 (1897); Walling v. Helmerich & Payne, Inc., 323 U. S. 37, 65 S.Ct. 11, 89 L.Ed. 29 (1944);

Gray v. Sanders, 372 U.S. 368, 376, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); United States v. Phosphate Export Assn., 393 U.S. 199, 202–203, 89 S.Ct. 361, 21 L. Ed.2d 344 (1968); Rowe v. General Motors Corp., 457 F.2d 348, 359 (5th Cir. 1972); Cypress v. Newport News General and Nonsectarian Hosp. Assn., 375 F.2d 648, 658 (4th Cir. 1967). If the defendants had coupled their tender with assurances that the procedures complained of would not recur in the future, this Court could certainly conclude that the case would be moot. However, no such assurances are apparently forthcoming and, on this basis, the case is not moot.

■ Secondly, even if the named plaintiff's claim were completely resolved, dismissal on the grounds of mootness would certainly be improper if this action is properly maintainable on a class action basis, since it is now well settled in the Fifth Circuit that the status of the named individual plaintiff's claim is irrelevant to the standing of the members of the class to maintain the action as a class action. Huff v. N. D. Cass Company of Alabama, 485 F.2d 710 (5th Cir. 1973) (en banc). In other words, resolution of the named plaintiff's claim does not, in any event, render the action moot as to the non-named class members. Jenkins v. United Gas Corp., *supra*; Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5th Cir. 1969); Miller v. Mackey Int'l, Inc., 452 F.2d 424 (5th Cir. 1971); Mick v. Sullivan, 476 F.2d 973 (4th Cir. 1973); Smith v. Young Men's Christian Ass'n. of Montgomery, 316 F.Supp. 899 (M.D. Ala.1970), modified and, as modified, affirmed 462 F.2d 634 (5th Cir. 1972); Gaddis v. Wyman, 304 F.Supp. 713 (S. D.N.Y.1969), aff'd sub nom. Wyman v. Bowens, 397 U.S. 49, 90 S.Ct. 813, 25 L.

5. Mr. Justice Harlan stated therein as follows:

> The 'property' of which petitioner has been deprived is the *use* of the garnished portion of her wages during the interim period between the garnishment and the culmination of the main suit. Since this deprivation cannot be characterized as de minimis, she must be accorded the usual requirements of procedural due process: notice and a prior hearing. (emphasis in original)

395 U.S. at 342, 89 S.Ct. at 1823.

Ed.2d 38 (1970); Kelly v. Wyman, 294 F.Supp. 887 (S.D.N.Y.1968), aff'd sub nom. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). For the reasons set forth in Section IV, this Court holds that this action is properly maintainable as a class action. Therefore, the case would not be moot as to the non-named class members.

## IV. CLASS ACTION

■■■■ This Court concludes that all the prerequisites to a class action set forth in Rule 23 of the Federal Rules of Civil Procedure have been satisfied. First, the record indicates that the class is sufficiently numerous as to render joinder inpracticable since, on the average, 85 postjudgment writs of garnishment are issued each month by the defendant Slaughter under the procedures being attacked herein. In addition, it is clear that there are questions of law and fact common to the class, that the claims of the representative party are typical of the claims of the class and that the representative party will fairly and adequately protect the interests of the class.

■■■■■ As to subsection (b)(2) of Rule 23, it is obvious that the defendant Slaughter has acted on grounds generally applicable to the class in the past and is apparently still continuing to issue post-judgment writs of garnishment without prior notice and an opportunity for a hearing to the debtors. Because of the continuing nature of this practice, the size of the affected class is increasing, thus making it appropriate for the named plaintiff to represent those who in the future will be subject to the same procedures employed by the defendants. Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968); Cantrell v. Folsom, 332 F.Supp. 767 (M.D.Fla.1971); Adderly

v. Wainwright, 46 F.R.D. 97 (M.D.Fla. 1968).[6]

## V. THREE–JUDGE COURT UNNECESSARY

■■■■ Despite the protestations of the intervenor defendant State of Florida to the contrary, this Court concludes that a three-judge court is unnecessary. As was pointed out in a previous order of December 10, 1973, in this case, denying the state's motion to convene a three-judge court, the general rule by which this Court is bound is that where only *declaratory* relief is sought and *not injunctive* relief which will prevent the enforcement of a state statute, a three-judge court is not required. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S. Ct. 554, 9 L.Ed.2d 644 (1963); Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); Nieves v. Oswald, 477 F.2d 1109, 1115 n. 15 (2d Cir. 1973).

The Fifth Circuit case of Sands v. Wainwright, 491 F.2d 417 (5th Cir. 1973), is not to the contrary. That case held that where the relief is ostensibly declaratory in nature but "the true impact of the court's judgment [is] injunctive", 491 F.2d at 426, a three-judge court is required. The district court's final judgment in *Sands* was injunctive in its impact because its order filed less than a week later clearly provided for implementation of the Court's declaratory judgment. In addition, the *pro se* plaintiff in *Sands* had unmistakably, albeit inarticulately, sought injunctive, and not merely declaratory, relief. In the instant case, by comparison, the plaintiffs have carefully and strenuously emphasized the declaratory nature of the relief requested and have never intimated in any way that implementation of a final declaratory judgment would be

---

6. The class of plaintiffs herein is hereby certified to include all Duval County residents who, after a judgment has been rendered against them, have had or may have their wages garnished pursuant to a writ issued by the defendant Slaughter, without first being afforded notice of said garnishment and an opportunity for a hearing to contest the propriety of said garnishment.

sought against the defendants in the form of an injunction.

▮▮▮ Therefore, since the only relief sought aside from damages for the named plaintiff is declaratory and not injunctive in nature, a three-judge court, under the general rule set forth above, is not necessary and this single-judge court has jurisdiction to reach the merits of this case. In addition, a declaratory judgment, under the facts of this case, would not have "virtually the same practical impact as a formal injunction would." Samuels v. Mackell, 401 U. S. 66, 72, 91 S.Ct. 764, 768, 27 L. Ed.2d 688 (1971).

## VI. MERITS

The substantive issue raised in this case is whether procedural due process requires that a judgment debtor must be afforded notice and an opportunity for a hearing prior to the issuance and service of a writ of garnishment on the debtor's employers. This requires a two-pronged analysis.

### (A) Deprivation of a Property Interest

▮▮▮ To resolve this isssue, the Court must first determine whether the plaintiff, a judgment debtor, was deprived of a "property" interest protected by the Fourteenth Amendment when a portion of her wages were withheld pursuant to a writ of garnishment served on her employer. The Supreme Court of the United States has settled this question in the case of Sniadach v. Family Finance Corporation, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), which held that the pre-judgment garnishment of wages without the chance to be heard violates procedural due process, thereby necessarily concluding that wages constitute a "property" interest subject to the protection of the Fourteenth Amendment.

▮▮▮ The defendants contend, however, that since the only property interest that a judgment debtor has in his wages after a judgment has been entered against him is that created by a Florida statute, and not by the federal Constitution, the interest ceases to be protected by the Fourteenth Amendment. This argument is without merit since it is well settled that a constitutionally protected property interest is not necessarily created by the Constitution. As the Supreme Court stated in Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972):

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Therefore, the fact that Fla.Stat. § 222.12 creates an exemption as to moneys due to a head of a family residing in Florida for personal labor and services is sufficient to create a property interest protected by procedural due process. This conclusion is not altered by the fact that this property interest may not involve a large amount of money for "to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." Board of Regents v. Roth, supra, 408 U.S. at 570–571, 92 S.Ct. at 2705 (emphasis added). Furthermore, "it is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." Fuentes v. Shevin, 407 U.S. 67, 84–85, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corporation, supra.

### (B) Governmental Interest

Having concluded that the plaintiff was deprived of a property interest subject to protection under the Fourteenth Amendment, the question arises as to what procedures are required under the

circumstances of this case. "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).

As pointed out in *Sniadach, supra,* 395 U.S. at 340, 89 S.Ct. at 1822, wages are "a specialized type of property presenting distinct problems in our economic system." A garnishment of wages may impose a "tremendous hardship on wage earners with families to support," and "may as a practical matter drive a wage-earning family to the wall." *Id.* 395 U.S. at 341–342, 89 S.Ct. at 1822. In 1968 the Congress specifically found, in enacting Subchapter II of the Consumer Credit Protection Act, 15 U.S.C. § 1671 et seq., that (1) "the unrestricted garnishment of compensation due for personal services encourages the making of predatory extensions of credit . . ."; (2) "the application of garnishment as a creditors' remedy frequently results in loss of employment by the debtor," with "resulting disruption of employment, production, and consumption" and (3) "great disparities among the laws of the several States relating to garnishment . . . destroyed the uniformity of the bankruptcy laws and frustrated the purposes thereof in many areas of the country." 15 U.S.C. § 1671. On this basis, Congress enacted limitations on the maximum allowable garnishment, 15 U.S.C. § 1673, and a prohibition against discharge from employment by reason of garnishment "for any one indebtedness." 15 U.S.C. § 1674. Wilful violation of the discharge from employment provision, 15 U.S.C. § 1674, could subject the violator to criminal penalties. Therefore, it can readily be seen that garnishment of wages generally as a governmental function is not favored, to say the least, under the law, especially with respect to the collection of small debts from low income wage earners.

More specifically, the legislative history of the Act as it relates to garnishment indicates that its primary thrust is directed toward abuses of the procedure by consumer financial lenders, such as loan companies. With this in mind it should also be noted that under the Consumer Credit Protection Act a person may be discharged by reason of a garnishment if the garnishment is for more than one indebtedness. 15 U.S.C. § 1674. In addition, a person whose wages have been garnished may be deprived of up to 25% of his weekly disposable earnings or the amount by which his weekly disposable earnings exceed 30 times the minimum hourly wage, whichever is less, pending resolution of the garnishment proceedings. 15 U.S.C. § 1673. For a person earning wages hovering around the minimum wage and supporting a large family, who is probably typical of the type of individual subject to garnishment of wages for a debt to a consumer finance company, temporary withholding of up to 25% of his disposable income may well result in his family's being temporarily deprived of many of the necessities of life, such as food, clothing, shelter and transportation. As pointed out by a commentator on the Florida statutory scheme relating to wage garnishment *before* judgment:

> To the many families that are dependent upon the immediate use of wages to buy the staples necessary for subsistence, a temporary freezing of funds may cause serious harm. Loss of the ability to purchase necessities for one week is not wholly counterbalanced by the recovery of the funds at some time thereafter if the creditor's claim is not vindicated.

> The collection of small debts is the most objectionable feature of the present garnishment system. Regardless of the debt owed, once the writ is issued all wages owed to the defendant are encumbered until after judg-

ment. For most wage earners, weekly wages are their only significant asset. Where there are neither savings, friends, nor relatives to provide support, the loss of wages for even a short time may be financially crippling . . ..

*Florida Wage Garnishment: An Anachronistic Remedy*, 23 U.Fla.L.Rev. 681, 687 (Summer 1971). These comments are also generally applicable to *post-judgment* garnishments.

Furthermore, because the Consumer Credit Protection Act does not prevent an employee from being discharged because of a garnishment for *more than one indebtedness*, an improvidently issued writ of garnishment may be disastrous to the average wage earner and his family. Even though the employer-garnishee may later be informed that the employee had in fact successfully quashed the writ of garnishment on the basis of a statutory exemption, he may not be willing to rehire that employee after he has once discharged him.

Besides the potentiality for serious prejudice to accrue to the wage earner from a writ of garnishment, the risk of error attendant to the issuance of such a writ is exacerbated by the fact that Florida law no longer requires that the judgment creditor state under oath that, to his knowledge, the wage earner is not the head of a family or is otherwise entitled to an exemption under Florida law. Fla.Stat. § 77.03.[7] Therefore, there exists the substantial risk that a writ of garnishment may be sought by a creditor who knows full well, as may be

true in the instant case, that the debtor is the head of a family and is thus entitled to an exemption under state law. As pointed out in Mr. Justice White's separate opinion in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15, 60 (1974), "rules of procedure are often shaped by the risk of making an erroneous determination." *See also* In re Winship, 397 U.S. 358, 368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring).

The fact that the debtor may have a cause of action for wrongful garnishment for malicious invocation of the legal process because of the creditor's knowledge of the existence of a "head of a family" exemption, Strickland v. Commerce Loan Co. of Jacksonville, 158 So. 2d 814 (1st D.C.A. Fla.1963), as contended by defendant Liberty Loan, may be of little comfort if the debtor has already been discharged from his employment because of the wrongfully issued writ. As pointed out in Fuentes v. Shevin, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972), "[I]t is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.' Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, [66]."

Furthermore, the risk of loss of employment because of the issuance of a writ of garnishment is not illusory. The administrative burden upon the employer caused by the imposition of writs of garnishment for wages of his employees can be onerous.[8] This problem

---

7. Florida law had previously required that the creditor aver under oath that the property sought to be garnished or attached "is not due for the personal labor or services of the head of a family residing in this state." *Virginia Mirror Co. v. Hall*, 181 So.2d 6, 7 (2d D.C.A.Fla.1965) ; *Noland Co. v. Linning*, 132 So.2d 802 (1st D.C.A.Fla.1961). However, this requirement was abrogated in 1967 by the present statute which now requires the plaintiff to "file a motion (which shall not be verified or negative defendant's exemptions) . . . .." Fla.Stat. § 77.03 (1969).

8. A commentator cites as an example of the administrative burden to an employer by virtue of the garnishment of wages of his employees the following :

. . . Boeing's Commercial Airplane Division was served with over 500 writs per month in Washington alone. . . . The company employed five clerks and a supervisor to check payroll records and answer the writs. The accounts of these employees whose wages were garnished were calculated by hand as opposed to the computer procedures normally followed. Such practices were necessary because a

becomes magnified because of the percentage limitations on disposable earnings that may be imposed under the Consumer Credit Protection Act. 15 U.S.C. § 1673. *See* Florida Wage Garnishment: An Anachronistic Remedy, 23 U.Fla.L.Rev. 681, 686 (Summer 1971). Therefore, a garnishee-employer may well have a vested interest in discharging the debtor-employee because of a garnishment.

■ Therefore, aside from any temporary deprivation of earnings occasioned by a garnishment of wages, the wage earner is subject to a substantial risk of being discharged from his employment due to the existence of a garnishment for more than one indebtedness. In addition, to reiterate, there is a substantial risk of error attendant to the issuance of a writ of garnishment because the Florida law does not require the creditor who is applying for the writ of garnishment to assert under oath that the judgment debtor is entitled to a statutory exemption. On this basis, this Court must conclude that procedural due process requires that a judgment debtor whose wages are to be garnished must be afforded prior notice and an opportunity to be heard in order to assert any exemptions to which he may be entitled under Florida law prior to the execution of a writ of garnishment upon the debtor's employer. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Sniadach v. Family Finance Corporation, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). This is so even though the debtor had the opportunity to contest the validity of the debt during the proceedings that resulted in judgment.

### (C) *Discussion of Authorities Cited by Defendants*

The recent Supreme Court case of Mitchell v. W. T. Grant, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), which limited the broad holding in Fuentes v. Shevin, *supra*,[9] does not require a contrary result.

In *Mitchell* the Supreme Court held that the Louisiana sequestration statute, which provided for sequestration of personal property on the application of a creditor who had made an installment sale of goods to the debtor and whose affidavit asserted delinquency and prayed for sequestration to enforce a vendor's lien under state law, did not violate the Due Process Clause of the Fourteenth Amendment, even though the sequestration was ordered *ex parte*, without prior notice or an opportunity for a hearing. The instant case is distinguishable from Mitchell on the following grounds: (1) the property seized in *Mitchell* was not exclusively the property

---

writ frequently catches only a portion of the wages due in a particular pay period.
. . .
. . . Boeing spent over $200,000 in 1967 as a direct result of garnishment against its employees. Of that amount, $120,000 represented direct expenses for clerical costs, et cetera, and the balance represented indirect expenses such as loss of time by employees. . . .
Florida Wage Garnishment: An Anachronism, 23 U.Fla.Rev. 681, 686 nn. 41, 42 (Summer 1971).

9. Mr. Justice Powell, in his concurring opinion in *Mitchell*, stated as follows:

In sweeping language, Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), enunciated the principle that the constitutional guarantee of procedural due process requires an adversary hearing before an individual may be temporarily deprived of any possessory interest in tangible personal property, however brief the dispossession and however slight his monetary interest in the property. The Court's decision today withdraws significantly from the full reach of that principle, and to this extent I think it fair to say that the Fuentes opinion is overruled. 416 U.S. 600, 94 S.Ct. at 1908, 40 L.Ed.2d at 423.

of the debtor as in this case; (2) the creditor in *Mitchell* who sought seizure of the property was required to file an affidavit stating "specific facts" that justified sequestration, whereas in this case the creditor was not required to state under oath that the judgment debtor was not entitled to an exemption under state law; (3) in *Mitchell* the participation of a state judge was required before the writ could issue; whereas, in this case the garnishment was initiated by a self-interested private party and accomplished by a *pro forma* ministerial action by a non-judicial officer; (4) the Louisiana statute in *Mitchell* provides for damages in the event of the wrongful issuance of a writ as distinguished from the instant statutory scheme which includes no such provision. As to the latter distinction, the judicially created cause of action in Florida for wrongful issuance of a writ of garnishment requires a showing of "malice", Strickland v. Commerce Loan Co. of Jacksonville, *supra,* which element is not required under the Louisiana statute; (5) the Louisiana statute provides for an immediate hearing and dissolution of the writ "un-less the plaintiff proves the grounds upon which the writ was issued"; whereas in this case, it appears from the statute that a hearing may not be provided the debtor until after 20 days after the writ issues. Under Section 77.04 of the Florida statutes,[10] the garnishee does not have to file an answer to the petition for the writ until 20 days after service. At no time is there provision for notice to the debtor even after filing of the garnishee's answer. The debtor will presumably not be officially placed on notice of the garnishment until after the wages are actually withheld. After the debtor initiates proceedings for exemption under Fla.Stat. § 222.12, the creditor has two days within which to file a counteraffidavit denying the exemption. Once the existence of the exemption is thus at issue, there is no statutory requirement for an immediate hearing on the exemption. Meanwhile, the wage earner will be deprived of a portion of his wages and may be subject to discharge from employment because of the administrative burden attendant to the garnishment.[11]

10. That section provides as follows:

77.04 *Writ; form*

The writ shall require the garnishee to serve an answer to it on plaintiff within twenty (20) days after service stating whether he is indebted to defendant at the time of the answer, or was indebted at the time of service of the writ, or at any time between such times; and in what sum and what tangible or intangible personal property of defendant he has in his possession or control at the time of his answer, or had at the time of service of the writ, or at any time between such times; and whether he knows of any other person indebted to defendant, or who may have any of the property of defendant in his possession or control. The writ shall state the amount named in plaintiff's motion.

11. Notice and hearing may be further delayed by operation of the following sections of the Florida Statutes:

77.061 *Reply*

When any garnishee answers and plaintiff is not satisfied with the answer, he shall serve a reply within twenty (20) days thereafter denying the allegations of the answer as he desires. On failure of plaintiff to file a reply, the answer shall be taken as true and on proper disposition of the assets, if any are disclosed thereby, the garnishee is entitled to an order discharging him from further liability under the writ.

77.07 *Writ; dissolution*

(1) The court to which a garnishment is returnable shall always be open for hearing motions to dissolve the garnishment.

(2) On motion by defendant served within twenty (20) days after service of the writ stating that any allegation in plaintiff's motion for the writ is untrue, this issue shall be tried, and if the allegation in plaintiff's motion which is denied is not proved to be true, the garnishment shall be dissolved.

(3) If the motion denies the debt demanded before judgment, the judge may require pleadings on motion of either party on the debt demanded to be filed in such time as he fixes.

(4) The issue, if any, raised by the pleadings shall be tried at the same time as the issue, if any, made by the defendant's motion to plaintiff's motion.

The defendants also rely on the case of Langford v. State of Tennessee, 356 F.Supp. 1163 (W.D.Tenn.1973) (three-judge court). The court in that case upheld the constitutionality of a Tennessee statute which provided for post-judgment levy of execution upon the personal property of a debtor without providing for a prior hearing to determine whether the property levied upon was exempt under other statutory provisions. The defendants' reliance upon this case is misplaced. First of all, the property subject to post-judgment execution in that case was an automobile which is qualitatively different from a person's wages. Prior notice in that case involves the substantial risk of disposal or secretion of the very asset which is to be sold to satisfy the judgment whereas it is highly improbable that a wage earner will quit his job to frustrate the efforts of his judgment creditor. The reason is that wages generally provide the exclusive means upon which the wage earner supports himself and his family. Secondly, the *Langford* court relied principally upon a 1924 United States Supreme Court case which is of extremely doubtful precedential value now.

In Endicott-Johnson Corporation v. Encyclopedia Press, Inc., 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924), the Supreme Court held that a judgment debtor is not required, under the Due Process Clause of the Fourteenth Amendment, to notice before the issuance of execution to reach wages in the hands of his employer. In Hanner v. DeMarcus, 389 U.S. 926, 88 S.Ct. 288, 19 L.Ed.2d 277 (1967), the Supreme Court granted certiorari to reconsider the *Endicott-Johnson* decision but later dismissed the writ as improvidently granted, 390 U.S. 736, 88 S.Ct. 1437, 20 L.Ed. 2d 270 (1968), apparently on the ground that the federal questions raised by the petitioner therein were not properly before the court because they had not been adequately presented to the Arizona courts below.

In his dissent to the dismissal of the writ of certiorari, Mr. Justice Douglas, with whom Chief Justice Warren and Mr. Justice Black concurred, asserted quite persuasively that *Endicott-Johnson* should be formally overruled in light of several subsequent Supreme Court decisions:

Endicott was decided in 1924, and its holding that due process does not require notifying a judgment debtor of execution on his property has never been reaffirmed by this Court. Significantly, the Court in Endicott did not hold that absence of any notice at all was permissible, but rather that the judgment debtor, having had his day in court and being aware of the judgment against him, is expected to know that execution may follow.

Since the Endicott decision, there has not been only an expansion of the scope of the notice requirement itself . . . (citing cases) but a new approach to the constitutional sufficiency of the *means* of giving notice in particular types of cases . . . (citing cases). "The means employed must be such as one desirous of actually informing [the opposing party] might reasonably adopt to accomplish it." . . . (citing a case). The Endicott rationale that a party who has litigated a case and had a judgment taken against him is deemed, for purposes of due process, to be on notice of further proceedings in the same action was rejected in Griffin v. Griffin, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635. There the wife won a divorce from her husband in 1926 and an award of $3,000 per year alimony. In 1938, without notifying her ex-husband, the debtor, she obtained a judgment for alimony arrears and a writ of execution. Under the applicable New York law, the husband could have defeated liability for the accrued arrearage by proof, for example, that the wife had remarried or of change of circumstances, such as comparative financial status, warranting retroac-

tive modification of the alimony award.

We held failure to give actual notice to the husband of the 1938 proceedings violated due process, saying: "While it is undoubtedly true that the 1926 decree, taken with the New York practice on the subject, gave petitioner notice at the time of its entry that further proceedings might be taken to docket in judgment form the obligation to pay installments accruing under the decree, we find in this no ground for saying that due process does not require further notice of the time and place of such further proceedings, inasmuch as they undertook substantially to affect his rights in ways in which the 1926 decree did not." *Id.*, at 229 [66 S.Ct. 561, 90 L. Ed. at 640].

Does not Griffin point the way to the demands of due process in the instant case? The further proceedings in Mrs. Hanner's case—execution and judicial sale—certainly "undertook to affect [her] rights." In Griffin substantial property rights were at stake at further proceedings because state law entitled the debtor to reduce his debt on proof of changed circumstances; in the instant case substantial property rights were at stake because state law gave the debtor the right to select the property to be levied on and to effectively prevent respondent from seizing property worth $20,000 or $40,000 for a $5,072.10 judgment. Is there any more reason to accept in this case the Endicott fiction of constructive notice because of knowledge of the underlying judgment than there was in Griffin?

390 U.S. 740–742, 88 S.Ct. at 1440.

This Court finds this reasoning to be applicable to the instant case and is all the more persuaded by its logic when one considers that these statements were made before *Sniadach, Fuentes,* Goldberg v. Kelly, *supra,* and their progeny. Furthermore, the instant case is stronger than these others because of the disfavored nature of the governmental function and the uniquely valuable nature of the property right involved herein. Therefore, on the basis of the foregoing discussion, this Court concludes that the notice provided in initially obtaining the judgment does not serve to provide sufficient constructive notice of the issuance of the writ of garnishment for purposes of procedural due process.

To the extent that the case of Raigoza v. Sperl, 34 Cal.App.3d 560, 110 Cal. Rptr. 296 (Cal.Ct. of App.1973), holds to the contrary, this Court rejects such holding. In *Raigoza* the California Second District Court of Appeal held that it was consistent with procedural due process to require the judgment debtor to apply for and prove the right to an exemption after post-judgment seizure of wages rather than to insist that the creditor prove in a pre-seizure hearing that arguably exempt property is subject to levy. This Court, with all due respect, disagrees with the underlying bases for that decision. First of all, the California court seemed to hold that because the policy for legislative exemption was not constitutionally required, the constitutional requirement of procedural due process did not apply. As pointed out above, however, the Supreme Court has held that a constitutionally protected property interest is not necessarily created by the Constitution but rather is defined by independent sources such as state law. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Secondly, the California court rejected the argument, which this Court considers persuasive, that post-judgment garnishment involves significantly different legal issues than those arising under the proceedings to secure the judgment. As the debtor in *Raigoza* correctly pointed out, the only issue determined in the regular proceedings resulting in judgment was whether the debtor owed the creditor a specific sum of money. Those proceedings did not address the issue of whether the creditor was entitled to seize the debt-

or's wages in order to satisfy the judgment. The *Raigoza* court seems to have impermissibly shifted the burden of proof from the "taker" to the one whose property is to be taken. This shift of proof cannot be condoned when the character of the governmental function and the nature of the property interest are properly analyzed.

Furthermore, the California court's attempt to distinguish the Supreme Court case of Coe v. Armour Fertilizer Works, 237 U.S. 413, 35 S.Ct. 625, 59 L. Ed. 1027 (1915)[12] is unpersuasive. *Coe*, as the California court concedes, stands squarely for the proposition that procedural due process applies to post-judgment proceedings. Although *Coe* involved a post-judgment proceeding against a third party rather than against the original defendant, the general principle for which it stands, when read in conjunction with *Sniadach*, *Fuentes*, *Goldberg*, *supra*, and their progeny, seems to clearly require the result reached in this case. Once again the disfavored character of the governmental action and the unique nature of the property interest involved in this case are determinative. Furthermore, the defendants herein have failed to demonstrate that this Court's holding would impose any undue administrative or economic burden upon them or others similarly situated.

## VII. CONCLUSION

Therefore, this Court hereby declares that procedural due process requires that a judgment debtor whose wages are to be garnished must be afforded notice and an opportunity for a hearing to determine the existence of any statutory exemptions to which he asserts he may be entitled prior to execution of a writ of garnishment upon debtor's employer. However, because of the strictly declaratory nature of the relief sought, this Court specifically declines to particularize the exact procedures by which the defendants may bring themselves within constitutional limits.

Therefore, it is

Ordered and adjudged:

That this case is hereby certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure; and, it is further

Ordered and adjudged:

That the class of plaintiffs in this case consists of all Duval County residents who, after a judgment has been rendered against them, have had or may have had their wages garnished pursuant to a writ issued by the defendant Slaughter, without first being afforded notice of said garnishment and an opportunity for a hearing to contest the propriety of said garnishment; and, it is further

---

12. The Supreme Court of the United States invalidated a Florida statute that permitted a judgment creditor of a corporation to levy on the property of a stockholder of the corporation with an unpaid subscription if the corporation did not have sufficient assets to satisfy the judgment. The court stated as follows:

> It may be conceded that a judgment recovered against a corporation, without fraud or collusion, in a court having jurisdiction over the subject matter and the party, may consistently with the Fourteenth Amendment be treated as concluding the stockholder respecting the existence and amount of the indebtedness so adjudged. . . . (citing cases) But before a third party's property may be taken to pay that indebtedness upon the ground that he is a stockholder and indebted to the corporation for an unpaid subscription, he is entitled, upon the most fundamental principles, to a day in court and a hearing upon such questions as whether the judgment is void or voidable for want of jurisdiction or fraud, whether he is a stockholder and indebted, *and other defenses personal* to himself. . . .

(citing cases) (emphasis added) 237 U.S. at 423, 35 S.Ct. at 628.

*Coe* is also authority for the proposition that "extra-official or casual notice, or a hearing granted as a matter of favor or discretion" cannot constitute a "substantial substitute for the due process of law that the Constitution requires." 237 U.S. at 424, 35 S.Ct. at 629.

Ordered and adjudged:

That the plaintiffs' motion for summary judgment, filed herein April 3, 1974, is hereby granted; and, it is further

Ordered and adjudged:

That a final summary judgment in favor of the named plaintiff Etta Jane Brown shall be entered contemporaneously herewith; and, it is further

Ordered and adjudged:

That a declaratory judgment in favor of the affected class of plaintiffs shall be entered contemporaneously herewith on the basis of the foregoing order and opinion; and, it is further

Ordered and adjudged:

That this order and opinion constitutes this Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## DECLARATORY JUDGMENT

This action came on for hearing before the Court, and the issues having been duly heard and a decision having been duly rendered, and findings of fact and conclusions of law having been entered contemporaneously herewith, it is

Ordered and adjudged:

That the named plaintiff Etta Jane Brown recover of the defendants Liberty Loan Corporation of Duval, a corporation, and S. Morgan Slaughter, as Clerk of the Circuit and County Courts of Duval County, Florida, the sum of $7.50, times an annual interest rate of 6% for the number of days that said funds were withheld from her by the named plaintiff's employer, Baby's Best Diaper Service, and her costs of action; and, it is further

Ordered and adjudged:

 That Sections 77.01, 77.03 and 222.12 of the Florida Statutes, to the extent that they authorize and permit the post-judgment garnishment of wages of an individual without first providing notice of said garnishment and an opportunity for a hearing to contest the propriety of said garnishment, are hereby declared to be in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.