[Civ. No. 32849. First Dist., Div. Two. Mar. 24, 1975.]

GEORGE R. PHILLIPS et al., Plaintiffs and Appellants, v.
RENO H. BARTOLOMIE, as Sheriff, etc., Defendant and Respondent;
MONTGOMERY WARD & COMPANY,
Intervener and Respondent.

[redacted]

## COUNSEL

William F. Lamb, James F. King, Jr., and George Forman for Plaintiffs and Appellants.

Duncan M. James, District Attorney, and Lee S. Adams, Deputy District Attorney, for Defendant and Respondent.

Rawles, Golden, Hinkle & Finnegan, Rawles, Hinkle, Finnegan, Brigham, Carter & Petersen, Thomas S. Brigham and Richard C. Burton for Intervener and Respondent.

## OPINION

**TAYLOR, P. J.**—Plaintiffs, George and Frances Phillips, judgment debtors, appeal from a judgment of dismissal after the court sustained the demurrers of respondent Bartolomie, the Sheriff of Mendocino County, and respondent in intervention, Montgomery Ward & Company, the judgment creditor, to their second amended complaint on grounds of mootness and failure to state a class action. Although the parties on appeal initially confined their briefs to these issues, we have not found it necessary to reach the pleading issues in view of *Raigoza* v. *Sperl* (1973) 34 Cal.App.3d 560 [110 Cal.Rptr. 296],[1] and, for other reasons set forth below, we have concluded that the judgment of dismissal must be affirmed.

Phillips' second amended complaint alleged the following facts: Respondent Bartolomie is the Sheriff of Mendocino County, charged with the duty of satisfying judgments through civil process, including garnishments and writs of execution, pursuant to the existing statutory scheme, as set forth by Code of Civil Procedure sections 542, 682, 682a, 682.1, 688, 690, subdivision (a), 690.7, 690.50 and 691, and to continue attempts to satisfy the judgment against Phillips, pursuant to writs of execution obtained by the judgment creditor. In 1969, respondent, Montgomery Ward & Company, a retail seller of goods and services, recovered a small claims judgment against Phillips and obtained a writ of execution. On April 14, 1972, Bartolomie levied and garnished on Phillips' entire joint checking account in a commercial bank, the Covelo branch of Wells Fargo Bank (bank). Phillips received notice of the levy from the bank. After receipt of the writ of execution and garnishment, the bank refused to honor Phillips' checks and denied them the use and possession of the money in their account. In addition, when dishonoring Phillips' checks, the bank informed the payees that the account had been closed and billed Phillips for a special handling charge for each check so dishonored.

Phillips' checking account has an average balance of $1,000 or less. George Phillips was severely disabled and unable to work and dependent on disability pensions paid to him by the Veterans Administration and the Social Security Administration; Frances Phillips was unable to work as she cared for their three minor children and a foster child; she depended for support on the benefits she received from the Social

---

[1]The closing brief in the instant case was filed on October 12, 1973.

Security Administration as a dependent of a disability pensioner and the AFDC foster care payments from the county welfare department. All of Phillips' income is comprised of benefits and pensions paid to them under programs of the Veterans Administration, Social Security Administration and county welfare department. All funds derived from these sources, whether held by the recipient or in a bank, are exempt from execution under state and federal statutes.[2] Funds derived from these sources were deposited in Phillips' checking account but could not be used after the levy without first going through the exemption procedures of Code of Civil Procedure section 690.50. Phillips now desire to maintain a checking account and would so deposit their exempt funds, but for the danger of continuing levies on the funds.

The first cause of action of Phillips' second amended complaint sought injunctive relief to prevent the sheriff from continuing to make levies pursuant to the statutory procedure and in deprivation of Phillips' rights to due process and freedom from unreasonable seizures, privileges and immunities secured by article I, sections 13 and 19 of the state Constitution and the Fourth and Fourteenth Amendments of the federal Constitution.

The second cause of action sought declaratory relief and alleged that a controversy had arisen as to whether judgment debtors with checking accounts were entitled to notice and a judicial hearing prior to levy on exempt funds in their accounts pursuant to sections 13 and 19 of article I of the state Constitution and the Fourth, Fifth and Fourteenth Amendments of the federal Constitution.

Substantially identical procedural due process contentions concerning this state's post judgment garnishment procedures were raised in *Raigoza v. Sperl,* 34 Cal.App.3d 560 [110 Cal.Rptr. 296]. *Raigoza* involved a judgment debtor, a portion of whose wages were garnished by the Los Angeles County Marshall, pursuant to Code of Civil Procedure section 690.6, a statute that, like 690.18 in the instant case, does not specifically

---

[2]Although the complaint does not so allege, the applicable exemption statutes of Code of Civil Procedure sections 690 and 690.18, subdivision (a), create an exemption for "All money received by any person, a resident of the state, as a pension, or as an annuity or retirement or disability or death or other benefit, or as a return of contributions and interest thereon, from the United States government, or from the state, or any county, city, or city and county, or other political subdivision of the state, or any public trust, or public corporation, or from the governing body of any of them, or from any public board or boards, or from any retirement, disability, or annuity system established by any of them pursuant to statute, *whether the same shall be in the actual possession of such pensioner or beneficiary, or deposited by him.*" (Italics supplied.)

provide that the funds are exempt from execution without filing of a claim of exemption pursuant to Code of Civil Procedure section 690.50. The judgment debtor, relying on *Sniadach* v. *Family Finance Corp.*, 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820],[3] and its progeny, urged that the statutory garnishment procedures were unconstitutional as there was no opportunity for a hearing to determine whether the wages were exempt prior to the levy. The court (fn. 9 at p. 567) interpreted his contention as a challenge to this state's entire execution and exemption procedure as applied to property not automatically exempt from execution. The court in *Raigoza* reviewed the exemption statutes, outlined the procedures of Code of Civil Procedure section 690.50, and held (at p. 567) that due process, as recognized and applied in *Sniadach,* does not invalidate this state's postjudgment garnishment procedures. The court continued: "Of course, 'although an individual can claim no constitutional right to . . . receive any . . . publicly conferred benefit, the government may not condition . . . receipt of such benefit upon any terms that it may choose to impose, and . . . the power of government to withhold benefits from its citizens does not encompass a "lesser" power to grant such benefits upon an arbitrary deprivation of constitutional rights. [Citations.]' (*Vogel* v. *County of Los Angeles,* 68 Cal.2d 18, 21 [64 Cal.Rptr. 409, 434 P.2d 961]; see also, e.g., *In re Tucker,* 5 Cal.3d 171, 192 [95 Cal.Rptr. 761, 486 P.2d 657].)"

The court then focused on the process involved and concluded that it was consistent with due process to require the judgment debtor to apply for and prove the right to an exemption. The court said at page 568: "We find no 'arbitrary deprivation' in requiring the debtor to apply for and

[3]*Sniadach,* like *Fuentes* v. *Shevin,* 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983], *Blair* v. *Pitchess,* 5 Cal.3d 258, 277 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206], *Randone* v. *Appellate Department,* 5 Cal.3d 536, 547 [96 Cal.Rptr. 709, 488 P.2d 13], *Adams* v. *Department of Motor Vehicles,* 11 Cal.3d 146 [113 Cal.Rptr. 145, 520 P.2d 961], and *Kruger* v. *Wells Fargo Bank,* 11 Cal.3d 352 [113 Cal.Rptr. 449, 521 P.2d 441], all relate to summary prejudgment remedies. Apart from *Raigoza,* there is a dearth of authority pertaining to postjudgment procedures, except in the context of invalid judgments (*Scott* v. *Danaher* (N.D.Ill. 1972) 343 F.Supp. 1272.) We also note that while the U.S. Supreme Court has somewhat retreated from the *Fuentes* emphasis on prior notice and hearing as procedural safeguards (*Mitchell* v. *W. T. Grant Co.* (1974) 416 U.S. 600 [40 L.Ed.2d 406, 94 S.Ct. 1895]), it continues to apply the *Fuentes* "extraordinary situation" test (*Calero-Toledo* v. *Pearson Yacht Leasing Co.* (1974) 416 U.S. 663 [40 L.Ed.2d 452, 94 S.Ct. 2080].) In *North Georgia Finishing* v. *Di-Chem* (1975) 419 U.S. 601 [42 L.Ed.2d 751, 95 S.Ct. 719], the court held that the Georgia garnishment statute did not satisfy the due process clause of the Fourteenth Amendment as the garnished property, absent a bond by the debtor, was put totally beyond use during the pendency of litigation merely on the basis of a writ of garnishment issued by a court clerk without notice or opportunity for early hearing and without participation by a judicial officer. The instant case is, of course, distinguishable as it involved a valid judgment after proper notice and hearing.

prove the exemption. [Citation.] In *Speiser* v. *Randall* (1958) 357 U.S. 513 [2 L.Ed.2d 1460, 78 S.Ct. 1332], which held unconstitutional a loyalty oath required to obtain a California veteran's tax exemption, the court easily accepted the 'familiar practice in the administration of a tax program for the taxpayer to carry the burden of introducing evidence to rebut the determination of the collector.' (*Id.* at p. 524 [2 L.Ed.2d at p. 1472].) The problem in Speiser was that 'on an issue concerning freedom of speech' (*id.* at p. 523 [2 L.Ed.2d at p. 1471]), the effect of requiring the loyalty oath as part of the tax exemption application was to place on the person seeking the exemption the burden of proving that he was not guilty of a crime. (*Id.* at p. 526 [2 L.Ed.2d at pp. 1472-1743].)

"Unlike *Speiser,* placing the burden on the debtor to prove his entitlement to the property exemption does not impinge on a constitutionally protected right. Speech is protected by the United States and California Constitutions; wage exemptions, as noted, are a matter of legislative choice. It is eminently reasonable to place the burden of applying for and proving that the wages are exempt on the debtor, who knows best what is 'necessary for the use' of his family. (See e.g., Witkin, Cal. Evidence (2d ed. 1966) Burden of Proof and Presumptions, § 198, pp. 182-183, and 1972 Supp.) Surely he is in a better position to prove his need for the garnished wages, than the creditor is to disprove it."[4]

Our Supreme Court denied a hearing in *Raigoza*[5] on December 5, 1973. ▆ While this denial does not necessarily indicate approval of the law as set forth in the Court of Appeal opinion, it is "not without significance as to the views of our state Supreme Court" (*DiGenova* v. *State Board of Education,* 57 Cal.2d 167, 178 [18 Cal.Rptr. 369, 367 P.2d 865]; 6 Witkin, Cal. Procedure (2d ed.) Appeal, §§ 669-670, pp. 4581-4584).

Nor, contrary to Phillips' contention, does the last phrase of section 690.18, subdivision (a) (e.g., "or deposited by him"), when read together with subdivision (b), afford a good argument against the application of Code of Civil Procedure section 690.50. Section 690.18, subdivision (b),

[4] " 'The truth seems to be, and many of the modern decisions expressly state, that the allocation of the burden is to be determined by considerations of fairness, convenience and policy.' (Morgan, Basic Problems of Evidence (1957) p. 28.)"

[5] In the supplemental brief filed by permission of this court, Phillips argues that *Raigoza* is factually distinguishable as it involved wages in the hands of an employer before payment to the judgment debtor. We note that a somewhat similar distinction, based on different kinds of property, was rejected by the U.S. Supreme Court in *North Georgia Finishing* v. *Di-Chem, supra,* 419 U.S. 601.

involves only a direction from the state to its own agencies or public agencies holding, controlling or in the process of distributing the same, and specifically states that the claim of exemption pursuant to Code of Civil Procedure section 690.50 need not be filed.[6] Section 690.18, subdivision (a), on the other hand, is directed against the persons who have already received the money and deposited it in a bank. For us to impose the responsibilities on depositories to determine in advance where all deposits come from, or to keep track of all checks as sources, would seem an impossible burden and the law so recognizes this by requiring the filing of the affidavits of exemption by the debtors.

■ For the first time at the oral argument on appeal and in their supplemental brief, subsequently filed with the permission of this court,[7] Phillips, relying on the supremacy clause of the United States Constitution,[8] and 38 United States Code section 3101(a),[9] as construed by *Porter* v. *Aetna Casualty Co.,* 370 U.S. 159 [8 L.Ed.2d 407, 82 S.Ct. 1231],[10] and 42 United States Code section 407,[11] as construed in *Philpott* v. *Essex*

[6]Thus, many of the statutes that provide for an exemption for certain types of aid without requiring the filing of a claim pursuant to Code of Civil Procedure section 690.50, read "prior to . . . payment" shall be exempt from 690.50. For example, see Code of Civil Procedure sections 690.15, 690.175 and 690.19.

[7]Generally, parties are not permitted to raise new questions for the first time on appeal or at oral argument. However, constitutional questions may be so raised. Furthermore, in view of the decision in *Raigoza* v. *Sperl* (see fn. 1., *ante*) in relation to the instant case, we would be derelict in our duty and could be accused of depriving the parties of due process, had we not permitted them to raise and discuss the substantive constitutional issues that could not have been anticipated by their filings below or their initial briefs that were confined only to the procedural issues of mootness and failure to state a class action.

[8]Article VI, clause 2 provides, so far as pertinent: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

[9]38 United States Code section 3101(a) (pertaining to veterans benefits) provides, so far as pertinent: "Payments of benefits due or to become due under any law administered by the Veterans' Administration *shall not be assignable except to the extent specifically authorized by law,* and *such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors,* and *shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."* (Italics added.)

[10]*Porter* v. *Aetna Casualty Co., supra,* involved the postjudgment garnishment of liquid bank deposits containing benefits paid to an incompetent veteran. Observing particularly those deposits constituting the "only funds available to meet [the veteran's] needs," should "remain inviolate," the court held that the accounts could not be reached by creditor process (at p. 162 [8 L.Ed.2d at p. 410]).

[11]42 United States Code section 407 (pertaining to Title II of the Social Security Act) provides: "The right of any person to any future payment under this subchapter shall not

*County Welfare Board,* 409 U.S. 413 [34 L.Ed.2d 608, 93 S.Ct. 590],[12] as well as 42 United States Code section 1383(d)(1) and 15 United States Code section 1673, urges that the federal statutes unconditionally exempt from all postjudgment process the funds in their account.

As to the cases, Phillips concede that neither *Philpott* nor *Porter* dealt with the validity of state procedures that only permit judgment debtors to claim federal exemptions on veterans and social security benefits *after* the actual levy (and consequent loss of use) has taken place. Phillips urge that the California exemption procedures conflict with, and are preempted by, the two federal exemption statutes as these federal exemption statutes have created vested property interests[13]—consisting of the security of the funds from levy—which must be protected from

---

be transferable or assignable, at law or in equity, and *none of the moneys paid* or payable or rights existing under this subchapter *shall be subject to execution,* levy, attachment, garnishment, *or other legal process,* or to the operation of any bankruptcy or insolvency law." (Italics supplied.) Phillips also refers to 42 United States Code section 1383(d)(1) which makes the provisions of 407 applicable to supplemental security income.

[12]In *Philpott* v. *Essex County Welfare Board, supra,* the county filed an action to reach, pursuant to a reimbursement agreement which had the same effect as a judgment, retroactive disability insurance under section 223 of the Social Security Act, funds deposited in a welfare recipient's account. The court, relying on the analogy to the veterans' benefits exemption construed in *Porter* v. *Aetna, supra,* held that the social security funds, although readily withdrawable, retained the quality of "moneys" and were not subject to "any legal process" (at p. 417 [34 L.Ed.2d at pp. 611-612]). We think *Philpott* is readily distinguishable as it involved an actual suit filed to reach trust funds.

[13]We are aware of *Brown* v. *Liberty Loan Corp.* (M.D.Fla. 1974) 392 F.Supp. 1023, decided on November 25, 1974, too late for citation at the oral arguments in the instant case. In *Brown,* the court held unconstitutional, on grounds of procedural due process, the Florida postjudgment wage garnishment procedure that deprived the debtor of an opportunity for a hearing to contest the propriety of the garnishment. Relying on *Fuentes, Sniadach* and *Board of Regents* v. *Roth,* 408 U.S. 564, 577 [33 L.Ed.2d 548, 560-561, 92 S.Ct. 2701], the court concluded that the debtor's interest in his job was a constitutionally protected property interest and distinguished the holding and reasoning of *Raigoza,* as it did not reach the issue of whether the creditor was entitled to seize the debtor's wages in order to satisfy the judgment. The *Brown* court relied on *Coe* v. *Armour Fertilizer Works,* 237 U.S. 413 [59 L.Ed. 1027, 35 S.Ct. 625]. However, as the court in *Raigoza* pointed out, at page 566, *Coe* involved a Florida statute that permitted a judgment creditor of a corporation to levy on the *stockholders'* property, the stockholders having had no previous opportunity to participate in any judicial determination of their liability. Further, we agree with *Raigoza's* construction of *Coe* and do not feel free to reject *Raigoza.* Nor can we here see any reasonable practical solution to the practical problem of segregating and identifying those bank accounts that would be free of the exemption claim procedures. In any event, in *Brown,* the garnishment was initiated by a self-interested party and accomplished by a pro forma ministerial action by a nonjudicial officer, and there was no provision for notice to the debtor. In the instant case, there is an admitted and valid judgment and Phillips had notice of all proceedings.

summary, prehearing, deprivation under the state and federal due process clauses. We cannot agree.

Furthermore, we think the language of the California exemption statutes declaring the moneys "exempt from execution" is synonymous with the language of the federal statutes construed in *Aetna* and *Philpott*.[14] We cannot read either of these cases to mean that the state cannot place a reasonable burden on the debtor to claim the exemption.

■ Phillips also argues that the California procedure is contrary to 15 United States Code section 1673,[15] part of the federal Consumer Credit Protection Act (15 U.S.C. § 1601 et seq., Pub.L. 90-321, tit. I, § 102, May 29, 1968, 82 Stat. 146) that places a limit of 25 percent on the weekly disposable earnings that can be subject to garnishment. We do not think that any of the funds deposited by Phillips here are within the definition of earnings of the "Truth in Lending" statutes.

■ Accordingly, applying the reasoning of *Raigoza* to the instant case, we hold that the requirement of Code of Civil Procedure section 690.18, subdivision (a) that the debtors claim the exemption statutes is reasonable. The money deposited by Phillips in the bank account is not "subject to execution" and is therefore "exempt from execution," but Phillips must file the affidavit and thus claim the exemption. We recognize, as indicated in *Randone* v. *Appellate Department*, 5 Cal.3d 536, 546 [96 Cal.Rptr. 709, 488 P.2d 13], that "under the procedures afforded for establishing the exempt nature of attached property, a debtor before obtaining a release of the attachment, may be forced to wait a period of 25 days." To save the expense of the execution procedure and to alleviate for himself the hardship of the waiting period, a judgment debtor, like Phillips here, could well discourage the creditor from a futile execution by filing his affidavit of exemption with the depository immediately after the judgment is entered, with a copy to the creditor.

---

[14]The language of the California statute "To be exempt from execution," is synonymous with "shall be exempt from the claim of creditors" in 38 United States Code section 3101(a), and "not subject to execution" in 42 United States Code section 407.

[15]This section, which did not become effective until July 1, 1970, provides, so far as pertinent: "(a) . . . the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed
"(1) 25 per centum of his disposable earnings for that week, or
"(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable, whichever is less."

In view of the above disposition of the substantive issues, we need not reach the pleading issues.

The judgment of dismissal is affirmed.

Kane, J., and Rouse, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 22, 1975.