Patricia **BETTS** and Donald Musumeci, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Clayton K. O. **TOM**, and Helen Coltes, in her capacity as Clerk of the District Court, State of Hawaii, Individually and on behalf of all persons similarly situated, Defendants.

RELIABLE COLLECTION AGENCY, LTD., a Hawaii Corporation, Individually and on behalf of all persons similarly situated, Defendant and Third-Party Plaintiff,

v.

Y. HIGA ENTERPRISES, LTD., a Hawaii Corporation, Third-Party Defendant.

Civ. No. 76–0123.

United States District Court, D. Hawaii.

May 17, 1977.

See also, D.C., 422 F.Supp. 1140.

**1370**

Paul Alston, Stanley E. Levin, Legal Aid Society of Hawaii, Honolulu, Hawaii, for plaintiff Betts.

James P. Dandar, Deputy Atty. Gen., Ronald Y. Amemiya, Atty. Gen., Honolulu, Hawaii, for defendant Coltes.

## DECISION

SAMUEL P. KING, Chief Judge.

### I.

### FACTS[1]

In July of 1975, Clayton K. O. Tom filed an action against Patricia Betts, a divorced mother of four children, for alleged breach of a lease agreement. On August 8, 1975, a state court entered a default judgment against Ms. Betts for $768.30, a sum including interests, costs, and fees. Four weeks later, at the request of Mr. Tom, defendant Helen Coltes, a clerk of the state court, issued a garnishee summons against Ms. Betts pursuant to Haw.Rev.Stat. section 652–1(b) (Supp.1975).[2] The summons was directed to the Bank of Hawaii where Ms.

1. These motions were heard upon a stipulated set of facts, filed with the court on January 19, 1977. They are supplemented by various affidavits.

2. Haw.Rev.Stat. §§ 652–1(a)–(b) (Supp.1975) are as follows:

(a) Before judgment. When any goods or effects of a debtor are concealed in the hands of an attorney, agent, factor, or trustee (in this chapter jointly and severally included in the term "garnishee"), so that they cannot be found to be attached or levied upon, or when any debt is due from any person (also included under the term "garnishee") to a debtor, or when any person has in his possession for safekeeping any moneys of the debtor, any creditor may bring his action against a debtor and in his petition for process, or by amendments of the complaint at any time

Betts had a small bank account consisting solely of unexpended funds she had received as an Aid to Families with Dependent Children (AFDC) grant. Under Hawaiian law, money received as part of an AFDC grant is exempt from execution by judgment creditors.[3] Despite this exemption, the garnishee bank froze Ms. Betts' account. She was unable to use her funds from the date of the garnishment, Septem-

before judgment, after meeting the requirements of section 652–1.5 may request the court to insert in the process a direction to the officer serving the same to leave a true and attested copy thereof with the garnishee or at his usual place of abode and to summon the garnishee to appear personally upon the day or term appointed in the process for hearing the action or at any other time appointed by the court and then and there on oath to answer all of the following inquiries, herein inclusively referred to as the "disclosure":

(1) Whether he has, or at the time the copy was served on him had, any of the goods or effects of the defendant in his hands and, if so, the nature, amount and value thereof;

(2) Whether he is, or at the time of service was indebted to the defendant and, if so, the nature and amount of the debt; or

(3) Whether he has or at the time of service on him had, any moneys of the defendant in his possession for safekeeping and, if so, the amount thereof.

The summons and direction, except as to wages as provided for above, shall be signed and issued after proceedings under section 652–1.5 as is usual in other civil process. It shall be served according to such direction. From the time of leaving such copy, the garnishee shall secure in his hands to pay such judgment as the plaintiff shall recover in the action, the following property or choses:

(1) All the goods and effects of the defendant then in the hands of the garnishee;

(2) Every debt then owing from the garnishee to the defendant;

(3) All moneys of the defendant then in the possession of the garnishee for safekeeping; and

(4) A portion of the wages of the defendant by withholding the amount to be determined as follows: five per cent of the first $100 per month, ten per cent of the next $100 per month, and twenty per cent of all sums in excess of $200 per month, or an equivalent portion of the above amount per week, whether then or thereafter to become owing. The property or choses described in (1), (2), (3), and (4) of this paragraph are included under the term "garnishee fund" (in this chapter.) The cumulative total value of the fund, in advance of final judgment, shall be no more than shall be sufficient to meet the claim of the plaintiff together with cost and legal interest. Any excess in the fund shall be released by the court pursuant to subsection (d) of this section. No part of the gar-

nishee fund may be otherwise disposed of by the garnishee except as provided in this chapter.

Except as provided in section 652–1.5, the summons and direction shall be sufficient notice to the defendant to enable the plaintiff to bring his action to trial, unless the defendant is an inhabitant of the State or has some time resided therein, in which case a like copy shall be served personally upon him or left at his last and usual place of abode.

The Court shall order the fund garnished before judgment released upon the filing by the debtor with the court of a bond or bonds issued by a surety or sureties licensed to do business as such in the State, in an amount sufficient to pay the claim of the creditor together with costs and interest, and conditioned upon judgment rendered in favor of the creditor and to the extent the claim or any portion thereof, together with costs and interest, if any, is awarded.

(b) After judgment. Wages may be garnished after judgment at the rates specified in the third paragraph of subsection (a) of this section but without regard to the conditions set forth in the second paragraph of subsection (a) of this section. In any action brought by a creditor against a debtor, the creditor may, after judgment rendered in his favor, request the court to summon any garnishee to appear personally, upon a day appointed in the summons for hearing the cause as against the garnishee, and make full disclosure; or in any action brought in the district court by a creditor against a debtor, the creditor may, ten days after judgment rendered in his favor, file a certified copy of the judgment and his affidavit as to the amount due and unpaid on account of the judgment with the employer of the judgment debtor and the employer shall thereupon either file a disclosure within one week or shall withhold from the wages of the judgment debtor the amounts as provided herein and pay the same to the judgment creditor.

Alias summons shall also be issued and served similarly as other civil process. From the time of leaving the copy of the alias summons, any and every element of any garnishee fund in the hands of the garnishee shall be there secured to pay the judgment already recovered and may not otherwise be disposed of by the garnishee.

3. Haw.Rev.Stat. § 346–33 provides:
Assistance payments . . . shall be inalienable by any assignment, sale, attachment, garnishment, execution, or otherwise.

ber 5, 1975, until October 1, 1975, almost four weeks later, when she was finally able to get a state court to quash the writ of garnishment. As a result of Ms. Betts' inability to use her AFDC grant during this four week period, she experienced great difficulty in supplying her family with the basic necessities of life. Indeed, she was forced to borrow from friends in order to survive.

Ms. Betts brought this action on behalf of herself and all those similarly situated[4] challenging the constitutionality of Hawaii's post-judgment garnishment procedures. She seeks a declaration that Hawaii's garnishment procedure violates the due process clause of the Fourteenth Amendment.[5] At this juncture, plaintiff Betts has moved for summary judgment on her constitutional claims.[6] The State, seeking a declaration that the state statute and procedure is constitutional, has filed a cross-motion for summary judgment.

4. On January 19, 1977, this court certified that this action was properly maintainable as a Rule 23(b)(2) class action. Ms. Betts represents the class of all residents of the State of Hawaii who, after judgment has been rendered against them, have had or may have their property garnished pursuant to a garnishee summons issued under the terms of Haw.Rev.Stat. § 652–1(b). Defendant Coltes represents the class of all clerks of the circuit and district courts of Hawaii.

5. Plaintiff is also seeking damages for herself from Clayton K. O. Tom, the party who secured the writ of garnishment. The damages claim is not before the court at this time.

6. Plaintiff chose to forgo any request for injunctive relief.

7. There are also a number of journal articles which have tackled this problem. *See, e. g.,* Alderman, *Default Judgments and Postjudgment Remedies Meet the Constitution: Effectuating Sniadach and its Progeny,* 65 Geo.L.J. 1 (1976); Greenfield, *A Constitutional Limitation on the Enforcement of Judgments—Due Process and Exemptions,* 1975 Wash.U.L.Q. 877.

8. *Brown v. Liberty Loan Corp. of Duval,* 392 F.Supp. 1023 (M.D.Fla.1974), *rev'd,* 539 F.2d 1355 (5th Cir. 1976); *Luskey v. Steffron, Inc.,* 461 Pa. 305, 336 A.2d 298 (1975), *aff'd on rehearing,* Pa., 366 A.2d 223 (1976).

## II.

## BACKGROUND OF THE PROBLEM

Plaintiff argues that the Hawaii statute violates the due process clause because it allowed her bank account to be garnished without prior notice to her and a judicial hearing on whether or not the account consisted of exempt assets. A number of courts around the country have recently considered the requirements of due process in the context of post-judgment execution.[7] As one would expect with such an important question, these courts have not been in complete agreement. Although a few courts have held that due process does require notice and a pre-execution hearing,[8] the majority of courts have concluded that a debtor has no right to a delay in the issuance of writs of execution after a valid judgment has been entered against him.[9] The courts reaching the latter result have not been able to agree on any one reason

9. *Brown v. Liberty Loan Corp. of Duval,* 539 F.2d 1355 (5th Cir. 1976); *First Nat'l Bank v. Hasty,* 410 F.Supp. 482 (E.D.Mich.1976); *Katz v. Ke Nam Kim,* 379 F.Supp. 65, 67–69 (D.Haw. 1974); *Langford v. State of Tennessee,* 356 F.Supp. 1163 (W.D.Tenn.1973); *Moya v. DeBaca,* 286 F.Supp. 606 (D.N.M.1968), *appeal dismissed,* 395 U.S. 825, 89 S.Ct. 2136, 23 L.Ed.2d 740 (1969); *Phillips v. Bartolomie,* 46 Cal. App.3d 346, 121 Cal.Rptr. 56 (1st Dist.Ct.App. 1975); *Raigoza v. Sperl,* 34 Cal.App.3d 560, 110 Cal.Rptr. 296 (2d Dist.Ct.App.1973); *Wilson v. Grimes,* 232 Ga. 388, 207 S.E.2d 5 (1974). *Cf. Halpern v. Austin,* 385 F.Supp. 1009 (N.D.Ga. 1974); *Bittner v. Butts,* 514 S.W.2d 556 (Mo. 1974); *Hehr v. Tucker,* 256 Or. 254, 472 P.2d 797 (1970).

Although *Katz v. Ke Nam Kim, supra,* was decided by now Senior Judge Pence of this district, it is not controlling in this case. In the first place, it was decided before the Supreme Court's decision in *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), which reaffirmed that Court's previous departure from the more traditional notions of due process. More importantly, *Katz* did not consider the impact of exemptions on *ex parte* post-judgment garnishment. Thus, the precise issue to be decided in the instant case was not faced by the court in *Katz.*

for their conclusion.[10] The only thing that almost all have agreed upon is that the starting point for any analysis of this question must be the Supreme Court's decision in *Endicott Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924). The State of Hawaii has primarily rested its case on the basis of that decision, and thus it is to *Endicott Johnson* that I now turn.

In *Endicott Johnson*, the Supreme Court held that a New York statute which allowed the garnishment of 10% of a judgment debtor's wages was constitutional, even though there was no notice to the judgment debtor before the garnishment became effective. The Court took an historical approach, equating due process with the "rules and principles which have been established in our system of jurisprudence . . . ." 266 U.S. 288, 45 S.Ct. 62. Since state courts had frequently held that no notice was necessary, the Court seemed to feel that such a procedure passed constitutional muster. *Id.* at 289, 45 S.Ct. 61. The Court supported its conclusion by reasoning that notice of the original proceeding provided sufficient "notice of what will follow." *Id.* at 288, 45 S.Ct. 61.

Although some courts have upheld all *ex parte* post-judgment garnishment because of *Endicott Johnson*,[11] many commentators have questioned the continuing authority of that case in light of the Supreme Court's decision in *Griffin v. Griffin*, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946). *See, e. g.,* Greenfield, *A Constitutional Limitation on the Enforcement of Judgments—Due Process and Exemptions*, 1975 Wash.U.L.Q. 877, 893. In *Griffin*, the petitioner and respondent had been divorced in New York in 1924. In 1926, in contested proceedings, the divorce decree was modified to provide for alimony and child support. In 1936, also in contested proceedings, the respondent obtained a judgment for past due alimony payments. In 1938, in an *ex parte* proceeding, the respondent obtained another judgment based on the amounts due under the 1936 decree and further amounts accruing after the 1936 decree. The Court held that this judgment, to the extent that it cut off any defenses petitioner might have raised after 1936, violated petitioner's due process rights because he had not received notice and a hearing before the judgment. The Court explained that:

> While it is undoubtedly true that the 1926 decree, taken with the New York practice on the subject, gave petitioner notice at the time of its entry that further proceedings might be taken to docket in judgment form the obligation to pay installments accruing under the decree, we find in this no ground for saying that due process does not require further notice of the time and place of such further proceedings, inasmuch as they undertook substantially to affect his rights in ways in which the 1926 decree did not.

327 U.S. at 229, 66 S.Ct. at 561 (citations omitted). Thus, the Court seemed to have rejected the rationale which led to its holding in *Endicott Johnson*. This view of the import of *Griffin* was held by at least three members of the Court in 1967. *Hanner v. De Marcus, dismissing cert. as improvidently granted*, 390 U.S. 736, 741–42, 88 S.Ct. 1437, 20 L.Ed.2d 270 (1968) (Douglas, J., dissenting).[12]

One could argue that just as the petitioner in *Griffin* should have had an opportunity to raise defenses accruing after the 1936

---

10. *E. g., compare Brown v. Liberty Loan Corp. of Duval, supra, with Langford v. State of Tennessee, supra.*

11. *See, e. g., Katz v. Ke Nam Kim*, 379 F.Supp. 65, 67–69 (D.Haw.1974); *Langford v. State of Tennessee*, 356 F.Supp. 1163, 1164 (W.D.Tenn. 1973); *Moya v. DeBaca*, 286 F.Supp. 606 (D.N. M.1968), *appeal dismissed*, 395 U.S. 825, 89 S.Ct. 2136, 23 L.Ed.2d 740 (1969).

12. One might also note that the assumption that notice of a proceeding provides notice of what will follow is not a particularly valid description of reality when a relatively poor consumer who is not familiar with the intricacies of judicial process is involved, especially when such a person suffers a default. *See* Alderman, *Default Judgments and Postjudgment Remedies Meet the Constitution: Effectuating Sniadach and its Progeny*, 65 Geo.L.J. 1, 13–16 (1976).

judgment a judgment debtor should be entitled to raise exemption claims which do not need to be proven until there is a valid claim (a judgment) against the debtor. The Court in *Griffin* did not refer to *Endicott*, and thus it is difficult to determine just how much the later decision undermines the prior one. It appears to me, however, that *Griffin* did not completely overrule *Endicott Johnson*. The *Griffin* Court did not question the *ex parte* 1938 judgment to the extent that it merely "confirmed " prior established rights and liabilities. 327 U.S. at 233–34, 66 S.Ct. 556. Consequently, this court cannot ignore the *Endicott Johnson* decision solely because of *Griffin*. *See also Brown v. Liberty Loan Corp. of Duval*, 539 F.2d 1355, 1363–65 (5th Cir. 1976).

Leaving *Griffin* aside, a number of courts and scholars have noted several more compelling reasons why *Endicott Johnson* may not be good authority for the proposition that *all* post-judgment execution meets the requirements of due process, despite the lack of notice and a hearing.[13] To begin with, the party challenging the garnishment procedure in *Endicott Johnson* was the garnishee, not the judgment debtor. Thus, the case might be distinguished as one only dealing with the garnishee's standing to assert a judgment debtor's right to notice and a hearing, despite the case's broad language.[14] There was also no consideration of the judgment debtor's right to exemptions in *Endicott Johnson*. Hence, the case might also be distinguished on the grounds that it applies only when there is no arguably exempt property upon which levy will occur.

More importantly, the concept of procedural due process is flexible. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Not only does it vary to meet the individual requirements of each situation but it also changes over time to reflect changes in society's valuation of various interests.[15] Undoubtedly, the *Endicott Johnson* Court would have found that the "rules and principles which have been established in our system of jurisprudence" included *ex parte* pre-judgment attachment of defendants' assets. Beginning in 1969, however, the Court struck down a number of *ex parte* pre-judgment attachment statutes whenever those statutes, in the Court's judgment, did not properly balance the interests of society, plaintiffs, and defendants in determining whether or not notice and a hearing should precede the seizure. *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). With this line of cases, the Court indicated that there are no hard and fast rules in this area. All relevant interests must be carefully balanced before a court can conclude that a certain procedure does or does not comport with procedural due process. Today a court should not blindly follow the *Endicott Johnson* decision. Enough has happened in the intervening years to justify a new analysis of due process requirements in light of the interests involved.[16]

---

**13.** *See, e. g., Brown v. Liberty Loan Corp. of Duval*, 539 F.2d 1355, 1364–65 (5th Cir. 1976); *First Nat'l Bank v. Hasty*, 410 F.Supp. 482, 489 n.8 (E.D.Mich.1976). *Cf. Vail v. Quinlan*, 387 F.Supp. 630, 635 n.3 (S.D.N.Y.1975), *rev'd on other grounds sub nom., Juidice v. Vail*, ——— U.S. ———, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), *reversing Vail v. Quinlan*, 406 F.Supp. 951 (S.D. N.Y.1976) (three-judge court).

**14.** *See* Greenfield, *A Constitutional Limitation on the Enforcement of Judgments—Due Process and Exemptions*, 1975 Wash.U.L.Q. 877, 888–89 n.54.

**15.** As any childhood reader of the works of Charles Dickens knows, it was not so long ago that the judgment of society was to place debtors in prison if they could not pay their bills. Fortunately for many of the poor, today society is not so harsh.

**16.** I note that the Fifth Circuit recently came to the same conclusion about the need to re-analyze this problem and not rely on *Endicott Johnson*. *Brown v. Liberty Loan Corp. of Duval*, 539 F.2d 1355, 1365 (5th Cir. 1976). *Cf. First Nat'l Bank v. Hasty*, 410 F.Supp. 482, 489 n.8 (E.D.Mich.1976).

## III.

## THE EFFECT OF THE DUE PROCESS CLAUSE

### A. Does the Due Process Clause Apply?

■ A preliminary question is whether any procedural protections are due when the state moves to deprive a person of a bank account consisting of funds traceable to an AFDC grant. The answer depends on whether or not the nature of the interest affected is "property" within the meaning of the Fourteenth Amendment. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Although Ms. Betts was denied access to her property for only four weeks, even the temporary deprivation of property can be a sufficiently grievous loss so as to require that due procedures be employed. *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). In this case, where Ms. Betts was deprived of the source of support for her children for four weeks, there is no question in my mind that her loss was significant enough to invoke the protections of the due process clause of the Fourteenth Amendment. *Sniadach v. Family Finance Corp., supra.*

### B. The Requirements of Due Process.

■ In order to determine the specific requirements of due process with regard to any taking of property, a court must consider several different things. First, the various conflicting private and public interests affected by state action must be analyzed and balanced. Next, the court should evaluate the risk that an erroneous deprivation of an affected interest will occur under present procedures. Finally, the probable value of additional or substituted procedures must be considered. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

1. *The Balancing of Interests.* There are a number of interests which are affected by post-judgment execution. The judgment creditor has a substantial interest in the satisfaction of his judgment with a minimum of further effort on his part. Resources expended in the collection process diminish the value of a creditor's ultimate recovery upon a claim which has already been judicially validated. Furthermore, in an era of inflation, any substantial time gap between the entry of a judgment and its collection will lead to a significant loss for the creditor. *See Brown v. Liberty Loan Corp. of Duval, supra*, at 1367. Delay in execution of a judgment also increases the risk that the debtor, now that he realizes that he has lost in court, will seek to dispose of his assets in order to avoid payment. *Cf. Mitchell v. W. T. Grant Co., supra*, 416 U.S. at 608–09, 94 S.Ct. 1895. It is worthwhile to note that although time passes and collection costs are incurred regardless of whether exempt or non-exempt assets are garnished, the creditor's interest is ultimately served only if the latter type of property is seized. To the extent that property exempt from execution is temporarily taken from the debtor, *ex parte* garnishment only adds time and expense to the creditor's effort. Weeks or even months later, an order quashing a writ of garnishment forces the creditor to start all over again.[17]

In contrast, the judgment debtor's interest in the instant situation is clear and compelling. Ms. Betts receives an AFDC grant in order to support her children. The very fact that she receives the grant is a recognition by the state that without the use of these funds, she cannot provide for even the basic needs of her children. Indeed, that is why the grant is exempt from execution under state law. Thus, in reality the interest she asserts is the continuing ability to feed and clothe her children. In considering the requirements of the due process clause, the need to keep oneself and one's family above the subsistence level is extremely important. *Goldberg v. Kelly*,

---

17. Unless, of course, the judgment debtor is not aware of his rights to retain his property despite the judgment. In that case, the creditor satisfies his judgment through a taking of exempt property. The probability that a creditor can take advantage of an ignorant judgment debtor is not an interest which can legitimate Hawaii's present post-judgment system.

397 U.S. 254, 263–64, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Deprivation for even a few days can often be disastrous. In addition, the possible length of the deprivation of a person's property is relevant in evaluating the importance of that person's interest. *Fusari v. Steinberg,* 419 U.S. 379, 389, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975). The longer the possible period before recovery can be, the more is a person's interest in a hearing before a seizure. In this case, four weeks passed before Ms. Betts could obtain an order quashing the writ of garnishment. Since Hawaii has no procedure guaranteeing an expedited post-judgment hearing for debtors, four weeks does not seem a bit unusual, regardless of the fact that in that time the debtor's family may be "driven to the wall," as was the family in *Sniadach v. Family Finance Corp., supra,* 395 U.S. at 341–42, 89 S.Ct. 1820. A guaranteed hearing also benefits debtors because it ameliorates the risk that a creditor will knowingly garnish assets which are exempt in an attempt to satisfy his judgment with assets which, although exempt, can quite possibly be taken if the debtor is not aware of his exemption rights. In summary, whenever an AFDC grant or account possibly traceable to such a grant is to be garnished, a judgment debtor has a strong interest in pre-seizure notice and a hearing.

The state also has a number of interests which must be analyzed. The fact that AFDC grants are exempt from execution under state law demonstrates that garnishment of funds traceable to these grants is disfavored by the state. On the other hand, the public interest is served by a smooth procedure which facilitates the collection of judicially validated claims. This interest must be evaluated in the light of its part in a larger state concern. The state has set up a system providing for the collection of commercial and personal judgments as an incentive for people to engage in business transactions.[18] Without the assurance of judicial resolution of potential economic conflicts, people would be loath to enter into any kind of commercial relationship with others. Perhaps the state's most important interest in this context is certainty in the system of collection. By lowering the risk of varying outcomes, the state encourages the extension of credit to consumers. Any reasonable system of collection, as long as potential creditors are aware of its terms, will satisfy the state's interest in a smooth-functioning system. Thus, as to the issue before this court, the state's interest is neutral. Indeed, to the extent that exempt assets are seized and then released after a writ of garnishment is quashed, thus delaying final collection of a judgment, the state's interest will be promoted by procedural safeguards designed to prevent erroneous seizures.

In balancing all of these interests, I feel the most important are those of a judgment debtor in the precise circumstances of this case. When funds solely traceable to an AFDC grant are seized, the debtor and his family immediately find themselves in danger of falling below the subsistence level. This is not a case where a television set, a car, or any of the other lesser "necessities" of life are involved. Even the seizure of a person's wages is not as detrimental since that person may have substantial savings upon which he can live until the seizure is remedied.[19] By definition, the AFDC recipient needs the grant in order to survive. At this point, the debtor's interest outweighs that of the creditor's in immediately satisfying his judgment. The slight delay in execution occasioned by procedures designed to safeguard exempt assets should not significantly affect the value of the creditor's recovery when it is finally made. Further, the risk that a judgment debtor will dispose of his assets in anticipation of execution is a significant creditor interest which also deserves protection, but that fact alone cannot justify dispensing with all

---

**18.** A similar interest was considered in another context by Justice Powell. *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 623, 624–25, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (Powell, J., concurring).

**19.** Most states only allow a certain portion of wages to be garnished. *See, e. g.,* Haw.Rev. Stat. § 652–1(a) (Supp.1975).

possible safeguards of the debtor's interest. Finally, as noted above, the public interest will be satisfied by any smooth-functioning and well-run system of execution.

2. *The Effect of the Present Statutes.* The present statutory scheme in Hawaii carries a substantial risk that an AFDC recipient will be erroneously deprived of the use of his or her grant due to unwarranted garnishment by judgment creditors. Section 652–1(b) has no provision for either pre-seizure notice or a hearing for the debtor. It does not require an affidavit from the judgment creditor as to the non-exempt nature of the property to be garnished. Nor does a judicial officer scrutinize the application for the writ. The clerk of the court merely signs a form writ after the blanks have been filled in by the judgment creditor. The writ issues automatically upon the creditor's application, regardless of the character of the property.

In oral argument, the state maintained that Haw.Rev.Stat. section 652–9 provided sufficient protection for the debtor's interest. That section allows a garnishee to interplead any funds it holds if there are conflicting claims to the fund *and* if the garnishee so desires.[20] This provides little, if any, protection for a judgment debtor whose sole liquid assets come from AFDC grants. In the first place, if the garnishee does not itself desire to interplead the fund, the debtor has no remedy. The garnishee can simply freeze the fund itself and either wait until the writ of garnishment is quashed, as was the case with the garnishee

bank here, or wait until the court directs payment to the creditor. Nothing in section 652–9, or any other state statute, sets a limit on the length of time which may pass before a hearing is actually had on the merits of the debtor's exemption claim. Thus, under present procedures, the judgment debtor faces a serious risk of being deprived, albeit "temporarily," of his interest in and ability to use an AFDC grant.

3. *The Permissible Alternatives.* The final step in due process analysis is to consider the probable value of additional or substitute procedural protections for the various interests affected by state action. Two alternatives immediately come to mind. First, the state could provide notice to the judgment debtor and a hearing before any garnishment or seizure takes place. Notice and a hearing similar to that required in *Sniadach v. Family Finance Corp., supra,* would certainly protect the interest of the judgment debtor. Regardless of upon whom the state places the burden of proof at a hearing, there would be a definitive judicial determination of the nature of the assets to be garnished. Hence, pre-seizure notice and a hearing is one constitutionally permissible alternative.

A more limited system of protections, similar to the sequestration statute approved in *Mitchell v. W. T. Grant Co., supra,* would also decrease the risk of an erroneous taking of the judgment debtor's property. Such a procedure would require that before a judgment creditor could obtain an *ex parte* writ of garnishment (1) it

---

**20.** Haw.Rev.Stat. § 652–9 provides that:

Whenever any person summoned as a garnishee may be desirous of so doing, he may apply to the magistrate or any judge of the court from which the summons may have issued, and the magistrate or judge having caused reasonable notice to be given to the plaintiff in the action, shall proceed to take the deposition of the person thus summoned, and make such order as may be proper in the premises, at any time previous to the date appointed for hearing the cause, and the person summoned as garnishee, shall be taken to have obeyed the summons. If it appears that there are conflicting claims to any moneys held for safekeeping, debt, goods, or effects in the garnishee's hands, any time after the summons is served the garnishee may be

permitted upon order of the judge or magistrate to pay into the court any moneys held for safekeeping, debts, goods, or effects in his hands, less any reasonable costs and attorney's fees allowed by the judge or magistrate and the garnishee will thereupon be discharged. With or without payment into court, any garnishee may, where there are conflicting claims to any moneys held for safekeeping, debt, goods, or effects in his hands of any amount, make application for an interpleader order in the manner provided by section 634–41 for defendants, and the judge or magistrate shall thereupon make all orders as appear to be just and reasonable.

would have to present an affidavit setting forth those facts which leads it to conclude that the assets to be garnished are not traceable to AFDC grants,[21] (2) the affidavit would have to be reviewed by a judicial officer who could then issue the writ, and (3) the judgment debtor would have to be entitled to notice and a quick, e. g., two working days, hearing on the merits of an AFDC exemption claim.[22] *See Mitchell v. W. T. Grant Co., supra,* 416 U.S. at 611–20, 94 S.Ct. 1895. In my opinion, this alternative would also constitutionally accommodate the various interests involved in post-judgment garnishment. The serious hardship on the AFDC recipient would be minimized since an erroneous freezing of funds could only occur for a brief period. The affidavit requirement will help protect the judgment debtor by forcing the creditor to consider the possibility of an AFDC exemption. In addition, by allowing a short *ex parte* seizure this procedure would protect the judgment creditor from being deprived of garnishable assets by those debtors who

would immediately dispose of their funds in contemplation of execution.

■ Since either of these two substitute procedures significantly decreases the risk of erroneous deprivations of the most important property interest involved, the state cannot, consistent with the due process clause, choose to run that risk in order to improve marginally the interests of judgment creditors. A proper balance of interests points the other way.

■ I therefore hold that Haw.Rev.Stat. section 652–1(b) (Supp.1975) is unconstitutional insofar as it allows the issuance of *ex parte* writs of garnishment to be served on *personal* checking accounts (or similar accounts) belonging to judgment debtors which may or do contain funds traceable to AFDC grants [23] without further statutory procedures.[24] At a minimum, such procedures must provide for a non-conclusory affidavit to be signed by a judgment creditor, review by a judicial officer, and a quick hearing on any claimed AFDC exemption.

21. This decision only deals with the exemption for AFDC grants. Whether a judgment debtor's interest in other exemptions requires these additional procedural protections is not an issue before this court and I express no opinion on that subject. Of course, a hearing on the nature of a fund which a creditor wishes to garnish could establish that another exemption is applicable. Whether or not the state must allow proof of these exemptions at the hearing is also not before the court at this time.

22. Again, the state could constitutionally place the burden of proof on either party.

23. Although this court originally certified that Plaintiff Betts represented the class of "all residents of the State of Hawaii who, after a judgment has been rendered against them, have had or may have their property garnished" under § 652–1(b), at this point I wish to proceed only as to garnishment of accounts which do or may contain funds traceable to AFDC grants. Pursuant to Fed.R.Civ.P. 23(c)(1) and 23(c)(4)(B), I will therefore order that Ms. Betts be certified to represent the subclass of all residents of the State of Hawaii who, after judgment has been rendered against them, have had or may have accounts possibly containing funds traceable to AFDC grants garnished under § 652–1(b). Other class representatives may proceed to reargue their cases for the benefit of the owners of other forms of garnishable property in light of this decision.

24. Thus, I decline to follow the leads of the Fifth Circuit in *Brown v. Liberty Loan Corp. of Duval, supra,* and of Judge Pratt in *First Nat'l Bank v. Hasty, supra.* To a certain extent, both cases are distinguishable in that there was no occasion for those courts to consider the precise issue here: whether or not the AFDC recipient's interest in maintaining a family above the subsistence level is an interest which is protected from lengthy, albeit "temporary" deprivation. In another sense, however, both of those courts were aware of most of the relevant interests but failed, in my opinion, to consider fully the impact of this state action on the judgment debtor. In effect, the proliferation of exemption statutes creates a further and separate element in any cause of action asserted by a plaintiff. The plaintiff must prove all of the traditional elements of any action in order to produce liability on the defendant's part. In addition, and disregarding for the moment the burden of proof, the plaintiff (now judgment creditor) must prove it is entitled to satisfy its claim out of a particular group of the defendant's (now judgment debtor's) assets. The state cannot aid a creditor in taking this step without minimal protection of the judgment debtor's rights. *See generally* Greenfield, *A Constitutional Limitation on the Enforcement of Judgments—Due Process and Exemptions,* 1975 Wash.U.L.Q. 877, 896–98.

I wish to emphasize the narrowness of this holding. I do not hold that all *ex parte* post-judgment takings require these procedures. *Ex parte* post-judgment seizures of other, non-liquid assets may not involve a debtor interest as strong as that of an AFDC recipient's need to keep a family above the subsistence level. For example, the docketing of a judgment in a recorder's office as a lien against real property may not require additional procedural protections, even if an exemption could possibly be claimed. A temporary incapacity to alienate property is just not as significant as the forced inability to feed one's family. Nor does a commercial enterprise have as strong an interest in its checking account as a person who may be receiving an AFDC grant has in his account. Which of the other exemptions available to judgment debtors under state or federal law may also involve important interests can be left for decision at another time.[25] This holding only extends to those funds which may or do contain money traceable to AFDC grants.

The motion of defendant Coltes for summary judgment will be denied. The motion of plaintiff Betts for summary judgment will be granted. An appropriate order declaring Haw.Rev.Stat. section 652–1(b) unconstitutional in accordance with this decision will issue.